Rabbi Yitzchok LeBLANC–STERNBERG, Chanie LeBlanc–Sternberg, Fred Walfish, Lewis Kamman, Park Avenue Synagogue, Inc., Plaintiffs–Appellants,

v.

Robert FLETCHER, Marianne Cucolo, John C. Layne, and Nicholas Vertullo, Individually and in their capacity as Trustees of the Village of Airmont, Maureen Kendrick, Individually and in her capacity as Mayor of the Village of Airmont, Raymond Kane, Paul Berliner, The Airmont Civic Association, the Town of Ramapo, and Herbert Reisman, Individually and in his capacity as Ramapo Town Supervisor, Defendants,

The Village of Airmont, Defendant–Appellee.

Docket No. 96–6287.

United States Court of Appeals, Second Circuit

Argued Oct. 9, 1997.

Decided May 13, 1998.

Reuben S. Koolyk, New York City (Arnold & Porter, New York City, Kevin W. Goering, Jeremy D. Platek, Coudert Brothers, New York City, Craig L. Parshall, Fredricksburg, VA, Anne–Marie Arriel, The Rutherford In-

stitute, Charlottesville, VA, on the brief), for Plaintiffs–Appellants.

Dennis E.A. Lynch, Nyack, NY (Rory K. Clark, Dorfman, Lynch & Knoebel, Nyack, NY, on the brief), for Defendant–Appellee.

Before: KEARSE and CABRANES, Circuit Judges, and CHIN, District Judge.*

KEARSE, Circuit Judge.

This case returns to us following several appeals in which we, *inter alia*, (1) reinstated a jury verdict in favor of plaintiffs Yitzchok LeBlanc–Sternberg, the rabbi of plaintiff Park Avenue Synagogue, Inc., *et al.*, against defendant Village of Airmont, New York ("Airmont" or the "Village"), for violation of plaintiffs' rights under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), and for conspiracy to discriminate against plaintiffs on the basis of their Orthodox Jewish religion, in violation of the First Amendment, *see LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412 (2d Cir.1995) ("*LeBlanc–Sternberg I* "), *cert. denied,* 518 U.S. 1017, 116 S.Ct. 2546, 135 L.Ed.2d 1067 (1996); (2) reversed the district court's entry of judgment against the United States in the government's parallel action against the Village under the FHA, *see id.;* and (3) affirmed, following proceedings on remand, the district court's granting of injunctive relief in both actions prohibiting the Village from future discrimination on the basis of religion and directing that certain amendments be made to the Village's zoning code, *see LeBlanc–Sternberg v. Fletcher,* 104 F.3d 355, 1996 WL 699648 (2d Cir.1996) (unpublished disposition) ("*LeBlanc–Sternberg II* "), *cert. denied,* —— U.S. ——, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997). In the present appeal, plaintiffs challenge so much of an order of the United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge,* as denied their motion under 42 U.S.C. §§ 1988(b) and 3613(c)(2) for an award of attorneys' fees and costs against the Village. The district judge denied the motion, stating, *inter alia,* that plaintiffs had not prevailed against parties other than the Village, that plaintiffs were only "technically"

prevailing parties against the Village "by virtue of the decision of the Court of Appeals," that they had not been granted the "major relief" they sought in the form of compensatory and punitive damages and the dissolution of the Village, that they had not materially changed the legal relationship between themselves and the Village, and that they had not prevailed on any issue critical or essential to their claims. On appeal, plaintiffs contend that by establishing the Village's liability for violation of their civil rights and thereby requiring the entry of equitable relief against the Village, they achieved significant success on their claims against the Village and were thus entitled to an award of attorneys' fees and costs against that defendant. Finding merit in plaintiffs' contentions, we vacate so much of the district court's order as denied plaintiffs such an award, and we remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The factual background of the litigation and plaintiffs' establishment of the Village's liability is set forth in detail in *LeBlanc–Sternberg I,* 67 F.3d 412, familiarity with which is assumed. Only the proceedings and facts pertinent to plaintiffs' request for fees and costs against the Village will be summarized here.

### A. Plaintiffs' Establishment of the Village's Liability

The present action was brought by plaintiffs under 42 U.S.C. §§ 1983, 1985, and the FHA against the Village and others, alleging principally that the Village had been incorporated for the purpose of excluding Orthodox Jews from Airmont, in violation of the FHA and the First Amendment. The complaint requested, *inter alia,* a declaratory judgment nullifying the incorporation of the Village; a permanent injunction "restraining the Defendants ... from continuing their unlawful acts and conspiracy, including" acts "with respect to ... zoning" (Second Amended Complaint

* Honorable Denny Chin, of the United States District Court for the Southern District of New York, sitting by designation.

at 32, ¶ 1.b.); and compensatory damages from the Village "in an amount to be determined at trial" (*id.* ¶ 1.c.). Thereafter, the United States brought a parallel action (the "government action") against the Village and others, also alleging that the Village had been incorporated for the purpose of enacting zoning regulations that would have the effect of excluding Orthodox Jews. The government sought principally a declaratory judgment that the Village had violated the FHA and an injunction against future housing discrimination. The two actions were consolidated for trial, with the government's claims and plaintiffs' claims for equitable relief to be decided by the court, and plaintiffs' claims for damages to be decided by the jury. The evidence at the eight-week trial included the following.

Until 1991, Airmont was an unincorporated area within the Town of Ramapo, New York ("Ramapo" or the "Town"), and was thus subject to the Town's zoning code. During the 1980s, after substantial numbers of Orthodox and Hasidic Jews moved to Ramapo, the Town made several zoning decisions to accommodate them, including, within certain limitations, allowing rabbis to use their own homes as congregational places of worship ("home synagogues"), in order to permit these new residents to adhere to requirements of their religion. Some residents of Airmont objected and formed defendant Airmont Civic Association, Inc. ("ACA"), which pushed for Airmont's incorporation as a Village in order to exempt Airmont from the Town's zoning power and permit it to implement a local zoning code designed to exclude Orthodox and Hasidic Jews. *See, e.g., LeBlanc–Sternberg I*, 67 F.3d at 418 ("'everybody knows ... why [ACA] was formed. What does [ACA] and the proposed village plan to do to keep these Hasid[i]m out?'" (quoting trial testimony describing a 1986 meeting of ACA)); *see also id.* at 418–19, 430–31. After Airmont residents had voted in 1989 to incorporate the Village, defendant Robert Fletcher stated at an ACA meeting that "'the only reason we formed this village is to keep those Jews ... out of here.'" *LeBlanc–Sternberg I*, 67 F.3d at 419. Thereafter, candidates backed by ACA were elected Airmont's mayor and trustees; Fletcher,

who was then ACA's president, was one of those trustees.

The zoning code eventually enacted by the Village contained language designed to curb the establishment and operation of home synagogues. The Village created a planning board to interpret and apply that code. Among the persons appointed to that board was ACA member James Montone, an active opponent of home synagogues and other accommodations for the observance of Orthodox tenets. Montone "had stated at an ACA meeting his view that 'most people were against houses of worship in residential areas,'" *LeBlanc–Sternberg I*, 67 F.3d at 421, and had sued to prevent a slight variance from the Town's 2–acre lot requirement that would have permitted construction of a synagogue on 1.926 acres, *id.* at 420. In addition, after an ACA board member, who was also a Village trustee, suggested that ACA not finance additional litigation against Orthodox and Hasidic Jews because "'there are other ways we can harass them,'" *id.*, Montone "had conducted surveillances of Orthodox Jewish homes at prayer times," *id.* at 421.

The jury, although finding that plaintiffs had not proven their claims against the individual defendants and had proven no damages, found that the Village had violated plaintiffs' rights under the FHA and had conspired to violate their rights under the First Amendment. In contrast, the district judge, in deciding the government action and the claims by plaintiffs for equitable relief, made findings in favor of the Village. The district judge found that although the Village's newly adopted zoning code could be interpreted to restrict home synagogues, the Village had not yet taken any action to apply it discriminatorily against Orthodox Jews; that there was insufficient evidence on which to conclude that the Village would discriminate against Orthodox Jews in the future; and that there was "no basis or need" for the equitable relief requested by the government and plaintiffs. *See United States v. Village of Airmont*, 839 F.Supp. 1054, 1064 (1993), *rev'd, LeBlanc–Sternberg I*, 67 F.3d at 435. In addition, on the basis of "[t]he facts recited in [his] opinion [in the government action]," *LeBlanc–Sternberg v. Fletcher*, 846

F.Supp. 294, 295 (1994), *rev'd, LeBlanc–Sternberg I,* 67 F.3d at 435, and on the basis of his view that the jury's verdict against the Village was inconsistent with its verdicts in favor of the individual defendants, the district judge concluded that "there was no possible basis for the jury's verdict against the Village," *id.* at 296. The judge thus granted the Village judgment as a matter of law, dismissing the claims on which it had been found liable by the jury.

All of these rulings by the district judge were reversed on appeal. In *LeBlanc–Sternberg I,* we noted that the district judge had an obligation to attempt to harmonize the findings implicit in the jury's verdict, and we concluded that a reasonable and logically consistent interpretation of those findings was

> that Airmont's zoning code would be interpreted to restrict the use of home synagogues, that the motivation behind the enactment was discriminatory animus toward Orthodox and Hasidic Jews, and that Airmont pursued this goal jointly with ACA.

67 F.3d at 431. We also reviewed the trial evidence and concluded that it amply supported the jury's verdict. That evidence included instances in which defendants took positions favoring other religions and nonreligious activities while opposing parallel activities by Orthodox and Hasidic Jews, *see, e.g., id.* at 430–31, as well as numerous explicit statements of anti-Orthodox-and-Hasidic animus, including those quoted above, *see, e.g., id.* at 418–19.

Further, given the Seventh Amendment provision for a jury trial, we noted that principles of collateral estoppel precluded the judge—both in the plaintiffs' action and in the government action—from making findings of fact that were contrary to the findings of the jury. *See id.* at 432 ("When two claims asserted by the same plaintiff are tried together and one is to be decided by the jury and the other by the judge, principles of collateral estoppel prevent the judge from making findings of fact contrary to those of the jury."); *id.* at 434 (same principles of collateral estoppel precluded court from making contrary findings in government action because "[t]he findings of the jury with respect to the private plaintiffs' FHA claims against the Village necessarily determined all of the liability issues in the government's FHA claim against the Village"). Since the jury's findings that the Village violated plaintiffs' rights under the FHA and conspired to violate their First Amendment rights were binding on the court, it was impermissible for the district judge to impose his own views of the facts and find that the Village had not so acted.

Because the district judge failed to apply this principle both in ruling in favor of the Village in the government action and in denying plaintiffs' claims for equitable relief, and because he erred in granting judgment as a matter of law in favor of the Village on plaintiffs' claims for damages, we set aside the judgments in both actions. In plaintiffs' action, we reversed so much of the judgment as dismissed the claims against the Village, and we remanded for entry of a judgment that, *inter alia,* awarded plaintiffs nominal damages, and for consideration of what equitable relief, if any, was appropriate in light of the findings of the jury. In the government action, we reversed the judgment entered in favor of the Village and remanded for entry of a judgment in favor of the government declaring that the Village had violated the FHA and awarding appropriate injunctive relief.

**B.** *The Granting of Injunctive and Other Relief on Remand*

On remand following *LeBlanc–Sternberg I,* plaintiffs and the government submitted their requests for equitable relief. The government requested, *inter alia,* an injunction (a) prohibiting the Village from interpreting its zoning code to prevent or hinder Orthodox Jewish rabbis from conducting religious services in their homes, and (b) requiring the Village to modify its zoning code to ensure that such religious services are permissible. Plaintiffs requested an order that the Village of Airmont be dissolved or, alternatively, an injunction forbidding the Village from, *inter alia,* using its zoning or other powers to prohibit, restrict, or hinder "individuals from peacefully assembling in any residential dwelling ... for the purpose of worship or

prayer." (Proposed Relief of Plaintiffs at 9.) In addition, plaintiffs "incorporate[d] by reference" a request for "all of the relief requested by the Government in its case." (*Id.* at 17.)

In the government action, the district court granted the government's requests. In addition to declaring that the Village had violated the FHA, the court entered an injunction that, *inter alia*,

> enjoins the defendant Village of Airmont and its officers, employees, agents, successors, and assigns, as appropriate, and all those acting in concert or participation with them, from:
>
> > (a) engaging in any conduct having the purpose or effect of perpetuating or promoting religious discrimination or of denying or abridging the right of any person to equal opportunity on account of religion, including, but not limited to, interpreting the Home Professional Office provision of the Airmont Zoning Code, or any other provision of the Airmont Zoning Code, so as to hinder, prevent, or prohibit persons from assembling in residential dwellings for the purposes of group prayer;
> >
> > (b) discriminating against any person or group or [*sic*] persons on account of religion in connection with the planning, development, construction, acquisition, financing, operation or approval of any housing in the Village of Airmont;
> >
> > (c) interfering with any person in the exercise of his right to secure equal housing opportunity for himself or for others; and
> >
> > (d) taking any action which in any way denies or makes unavailable housing to persons on the basis of religion.

*United States v. Village of Airmont*, 925 F.Supp. 160, 161 (1996), *aff'd*, *LeBlanc–Sternberg II*, 104 F.3d 355. The judgment also required the Village to make certain "revisions, modifications, deletions, and additions to the Village of Airmont Zoning Code," ordering it, *inter alia*, to add a provision stating that

> [n]othing in this Zoning Code of the Village of Airmont, New York shall be construed or interpreted in any manner what-

soever so as to hinder, prevent, or prohibit individuals from peacefully assembling in residential dwellings solely for the purposes of individual or group prayer;

to add the following definition:

> RESIDENTIAL PLACE OF WORSHIP—An area located within a residence that is used for the conducting of religious services. It is the intent of this Local Law that the presence of pedestrians walking to and from religious services at a Residential Place of Worship shall not in and of itself constitute a change in the residential character of the neighborhood;

and to make provision specifically that

> [t]he Residential Place of Worship will be permitted by right on any day in all residential zones.

*Id.* In addition, the Village was ordered to add or alter certain other provisions dealing with other buildings used for conducting organized religious services.

The injunction further requires the Village, for a period of five years, to give the government advance notice of the scheduling of and agendas for any Village planning board or zoning appeals board meeting at which any applications relating to religious worship are to be considered, and to report to the government any proposed changes in the Village's zoning ordinances relating to religious worship.

In the present action, the district court, as directed by *LeBlanc–Sternberg I*, awarded plaintiffs nominal damages. In addition, the court granted plaintiffs' request for injunctive relief to the extent of the injunction granted in the government action. It denied plaintiffs' request for an order dissolving the Village, expressing skepticism about its power to issue such an order, stating that it declined to "use a sledgehammer where a more delicate instrument w[ould] suffice" and that "the relief requested by the government and granted by th[e District] Court adequately meets the Second Circuit's concerns." *LeBlanc–Sternberg v. Fletcher*, 922 F.Supp. 959, 965 (1996), *aff'd*, *LeBlanc–Sternberg II*, 104 F.3d 355. The court stated:

While we question whether the private plaintiffs ... require any injunctive relief at all, that which has been granted in the government's action will more than suffice. We believe that, to the extent that their requests are justified, they have been adequately encompassed by granting the government's requests.

*Id.* at 966. Accordingly, the judgment entered in the present action granted injunctive relief "to the extent of that set forth in the Order and Judgment in the [government action]." (Order and Judgment dated April 25, 1996.)

The Village appealed from the judgments entered in both plaintiffs' action and the government action. We affirmed in both cases. *See LeBlanc–Sternberg II,* 104 F.3d 355.

## C. *The Denial of Plaintiffs' Request for Attorneys' Fees*

In the meantime, pursuant to 42 U.S.C. §§ 1988(b) and 3613(c)(2), plaintiffs had moved for an award of attorneys' fees and costs, eventually requesting approximately $1.5 million. Acknowledging that they had not obtained more than nominal monetary damages, plaintiffs argued that their "primary objective was not monetary, but rather, was to eliminate the threat of discriminatory zoning" (Reply Memorandum of Law in Support of Plaintiffs' Application for Attorneys' Fees and Costs at 3), and they argued that the court had awarded significant injunctive relief. Plaintiffs contended that since they had succeeded "in requiring the [Village] to change its policies, behavior, and zoning code" (Memorandum of Law in Support of Plaintiffs' Application for Attorneys' Fees and Costs at 8), they had "received most of the injunctive relief which they requested" (*id.* at 10), and were thus entitled to an award of fees.

Plaintiffs also submitted affidavits demonstrating that they and the government had closely coordinated their requests for injunctive relief, and they pointed out that their success at trial was the foundation for the grant of the relief requested by the government:

The efforts of the plaintiffs and their counsel have been a direct[ ] and traceable 'catalyst' in obtaining the type of relief requested by the Government, and in [*sic* ] the jury verdict obtained against the Village, and therefore the private Plaintiffs' case became the ultimate fulcrum for success.

(*Id.* at 7 (emphasis omitted).)

The Village opposed a fee award on two principal grounds. First, noting testimony by the individual plaintiffs that they had not in fact been prevented by the Village from attending religious services, the Village argued that because plaintiffs' home synagogue had operated without interruption since before the incorporation of the Village, plaintiffs' lawsuit—and the resulting injunctions—had not " 'materially' altered" the legal relationship between the Village and plaintiffs. (Village Memorandum of Law in Opposition to Plaintiffs['] Application for Attorneys['] Fees and Costs at 15.) Second, the Village argued that because plaintiffs did not obtain an order directing "a total dissolution of the Village of Airmont," they "failed to obtain the degree of success th[e] ... Plaintiffs themselves defined as a successful Court remedy." (*Id.* at 18.) The Village contended that the grant of plaintiffs' " 'copycat' request" for the injunctive relief requested by the government was insufficient to warrant an award of fees. (*Id.*)

In a Memorandum Decision dated October 15, 1996 ("Fee Decision"), the district court, "[i]n the exercise of its discretion," Fee Decision at 11, denied plaintiffs' motion for fees. The district judge found that

plaintiffs were not prevailing parties against most of the defendants whom they sued originally and, indeed, were specifically the losing party with respect to five who went to trial individually and as Trustees. They were technically a prevailing party only against the Village by virtue of the decision of the Court of Appeals.

*Id.* at 6. He stated that although "plaintiffs were technically a 'prevailing party,' " *id.* at 9, "in awarding legal fees, you must focus on whether the legal relationship between the parties ha[s] been altered," *id.* Finding that

[t]he Village of Airmont ... took no action against any of the private plaintiffs[, and

that d]uring deposition and at trial, the private plaintiffs acknowledged that the Village itself had done nothing to interfere with their conducting of religious services, *id.* at 6, the judge concluded that "[t]he institution and prosecution of [plaintiffs'] suit did not effect [*sic*] the behavior of the defendant Village in any meaningful way," *id.* at 8. Although the judge acknowledged that "the relief obtained by the government may be helpful to any new religious groups which desire to hold services in a private home in a residential area," he concluded that "[t]he judgment entered in th[e present] case did not materially change the legal relationship between the [ ] private plaintiffs and the Village." *Id.*

In addition, noting that "[t]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained," Fee Decision at 10, the district judge concluded that plaintiffs' success was "most limited," *id.* Citing *Farrar v. Hobby*, 506 U.S. 103, 114–15, 113 S.Ct. 566, 574–75, 121 L.Ed.2d 494 (1992), for the proposition that "[a] plaintiff who formally prevails shall not receive attorneys' fees where it is seeking primarily compensatory damages but obtains *nothing* but nominal damages," Fee Decision at 10 (emphasis added), the district judge concluded that "[t]he award of attorneys' fees in this case is governed by *Farrar*," Fee Decision at 9. The judge found that

plaintiffs sought primarily monetary damages of $1,000,000, plus punitive damages in an unspecified amount. The plaintiffs were interested in building a traditional free standing synagogue. However, they lacked the money with which to build one. A substantial monetary award in this case would have financed the building of the synagogue.... The only injunctive relief they sought (prior to the Court of Appeals decision which focused on the Zoning Code) was the abolishment of the Village of Airmont and/or the return of Orthodox Jewish residential areas to the Town of Ramapo. They did not obtain that injunctive relief. The plaintiffs did not prevail on any issue critical or essential to their claims.

*Id.* at 7–8 (footnotes omitted). Since plaintiffs received "only nominal damages of one dollar per plaintiff and ... no injunctive relief except to the extent that the government's request was granted," *id.* at 4, the district judge concluded that plaintiffs had not attained a sufficient degree of success to merit an award of fees, *see id.* at 10. The judge rejected the argument that plaintiffs were entitled to a fee award on the ground that the jury verdict they won was the linchpin for the government's success, stating that "[e]ven if ... they contributed to the success of the government on its appeal, it was, compared to what the plaintiffs had sought, a most limited degree of success for them." *Id.*

The district judge also stated that the number of hours claimed by one of plaintiffs' attorneys was "not entirely supported by time records," *id.* at 9 n. 12; that "[t]he number of hours claimed to have been devoted to this action by the various plaintiffs' counsel are excessive and duplicatory," *id.* at 9; and that "[t]he fee sought by plaintiffs results from excessive hours expended, most of which involved defendants as to whom plaintiff[s] did not prevail and claims for damages which were unsuccessful," *id.* at 10. The judge found it unnecessary to make findings as to how many of the claimed hours he viewed as excessive, duplicative, or unsupported, given his ultimate ruling that no fee was reasonable because of plaintiffs' lack of success, *see, e.g., id.* at 9 n. 12.

This appeal followed.

## II. DISCUSSION

On appeal, plaintiffs contend that the denial of their motion under 42 U.S.C. §§ 1988(b) and 3613(c)(2) for an award of attorneys' fees against the Village was an abuse of discretion because they obtained significant injunctive relief against the Village and because their success before the jury in this action was the foundation for the entry of judgment against the Village in the government action. The Village, in opposition, contends that the district judge properly denied fees on the grounds that (1) plaintiffs were not "prevailing" parties because the present litigation did not alter the legal relationship between the

parties; (2) since plaintiffs' requests for injunctive relief were granted only to the extent that injunctive relief was awarded to the government, "[plaintiffs'] lawsuit was *completely unnecessary*" (Village brief on appeal at 28 (emphasis in original)); and (3) "the remedy imposed by the District Court relates exclusively and effectively to Orthodox Jewish residents only" and therefore served no "public" purpose (Village brief on appeal at 34). We agree with plaintiffs' contentions and find no merit in those of the Village.

## A. The Standard of Review

■ In actions under § 1983 and the FHA, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee" and costs. 42 U.S.C. §§ 1988(b), 3613(c)(2). The same substantive standards apply in both types of cases, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983) (same standards are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"), and in both, the district court's decision is reviewed for abuse of discretion, *see, e.g., Cabrera v. Jakabovitz*, 24 F.3d 372, 392 (2d Cir.) (§ 3613(c)(2)), *cert. denied*, 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994); *LaRouche v. Kezer*, 20 F.3d 68, 71 (2d Cir.1994) (§ 1988(b)).

■ Reviewable for abuse of discretion, however, "is not the equivalent of unreviewable." *Orchano v. Advanced Recovery, Inc.,* 107 F.3d 94, 99 (2d Cir.1997) (internal quotation marks omitted). A district court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the record. *See, e.g., Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.,* 28 F.3d 259, 264–65 (2d Cir.1994); *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991).

In the present action, we conclude that the district judge's decision was based on clear errors of both fact and law.

## B. Plaintiffs' Status as "Prevailing" Parties

■ The question of whether a plaintiff is a "prevailing party" within the meaning of the fee-shifting statutes is a threshold question that is separate from the question of the degree to which the plaintiff prevailed. *See, e.g., Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939. For a plaintiff to be considered a "prevailing party," and thus eligible for an award of fees, he need not have succeeded on "the central issue" in the case, *Texas State Teachers Association v. Garland Independent School District,* 489 U.S. 782, 790–91, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989), and need not have "obtain[ed] the primary relief sought," *Carroll v. Blinken,* 42 F.3d 122, 130 (2d Cir.1994) (internal quotation marks omitted); *see LaRouche v. Kezer,* 20 F.3d at 71. It is sufficient that the plaintiff succeeded on "any significant issue in [the] litigation," *Texas State Teachers Association v. Garland Independent School District,* 489 U.S. at 791, 109 S.Ct. at 1493 (internal quotation marks omitted), regardless of "the magnitude of the relief obtained," *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992), if he received "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff," *id.* at 111–12, 113 S.Ct. at 573.

In *Farrar v. Hobby,* the Supreme Court held explicitly that "a plaintiff who wins nominal damages is a prevailing party." 506 U.S. at 112, 113 S.Ct. at 573. The Court stated that "[a] judgment for damages *in any amount, whether compensatory or nominal,* modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113, 113 S.Ct. at 574 (emphasis added).

In the present case, following the reversal and remand in *LeBlanc–Sternberg I,* ruling that the jury verdict in plaintiffs' favor against the Village was fully supportable and entitled them as a matter of law to nominal damages, *see* 67 F.3d at 431, the district court duly awarded each plaintiff nominal

damages against the Village. Thus, in his Fee Decision the district judge erred in ruling that "[t]he institution and prosecution of [plaintiffs'] suit did not effect [*sic*] the behavior of the defendant Village in any meaningful way," Fee Decision at 8, and that the judgment in the present case "did not materially change the legal relationship between the[ ] private plaintiffs and the Village," *id.* Under *Farrar v. Hobby*, even if plaintiffs had been awarded no other relief, their entitlement to nominal damages made them "prevailing part[ies]."

## C. Whether "No Fee" Was Reasonable

■ A plaintiff who has "prevail[ed]" in the litigation has established only his eligibility for, not his entitlement to, an award of fees. *See, e.g., Farrar v. Hobby*, 506 U.S. at 114, 113 S.Ct. at 574–75; *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939. The district court retains discretion to determine, under all the circumstances, what constitutes a "reasonable" fee, *id.*, and in appropriate circumstances the court may conclude that, even though a plaintiff has formally prevailed, no award of fees to that plaintiff would be reasonable, *see, e.g., Farrar v. Hobby*, 506 U.S. at 114–15, 113 S.Ct. at 574–75. In *Farrar*, the plaintiffs had sought $17 million in damages but ultimately received only nominal damages of one dollar. They had withdrawn a claim for injunctive relief, and they received no other relief. The Court noted that "[i]n a civil rights suit for damages," a fee award will rarely be justified when a plaintiff "fail[s] to prove an essential element of his claim for monetary relief." *Id.* at 115, 113 S.Ct. at 575. The Court concluded that "[w]here recovery of private damages is *the* purpose of ... civil rights litigation," a plaintiff who obtains no more than nominal damages will typically not merit an award of attorneys' fees. *Id.* at 114, 113 S.Ct. at 575 (emphasis added) (internal quotation marks omitted). Similarly, in *Pino v. Locascio*, 101 F.3d 235 (2d Cir.1996), this Court held an award of fees improper where the plaintiff had sought $21 million in damages, had dropped her claims for declaratory and injunctive relief, and had received only a nominal one-dollar award. In each of those cases, the plaintiffs did not pursue any claim

for equitable relief. Consequently, their monetary recovery was the only reasonable measure of their success.

■ In contrast, where both monetary and equitable relief have been pursued, the size of the monetary recovery is not necessarily the proper measure of the plaintiff's success. "For example, a plaintiff who failed to recover damages but obtained injunctive relief ... may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Hensley v. Eckerhart*, 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11; *see also McCardle v. Haddad*, 131 F.3d 43, 54 (2d Cir.1997); S.Rep. No. 94–1011, at 6 (1976) (fees should "not be reduced because the rights involved may be nonpecuniary in nature"), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913. An award of fees is thus appropriate if the plaintiff's suit resulted in the granting of significant injunctive relief, *see, e.g., Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir.1997), or "created a new rule of liability that serve[s] a significant public purpose," *Pino v. Locascio*, 101 F.3d at 239 (citing *Cabrera v. Jakabovitz*, 24 F.3d at 393).

■ Further, if significant equitable relief was granted, an award of fees is proper even if the court is not persuaded that that equitable relief was the plaintiff's "primary" goal:

[F]ocusing on the subjective importance of an issue to the litigants ... asks a question which is almost impossible to answer. Is the "primary relief sought" in a disparate treatment action under Title VII reinstatement, backpay, or injunctive relief? This question, the answer to which appears to depend largely on the mental state of the parties, is wholly irrelevant to the purposes behind the fee shifting provisions....

*Texas State Teachers Association v. Garland Independent School District*, 489 U.S. at 791, 109 S.Ct. at 1493. "If the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Id.* at 791–92, 109 S.Ct. at 1493 (internal quotation marks omitted).

■ In denying fees in the present case, the district judge stated, *inter alia,* that "plaintiffs did not prevail on any issue critical or essential to their claims." Fee Decision at 8. This statement was incorrect. Plaintiffs won a jury verdict establishing that the Village had (a) violated their rights under the FHA and (b) conspired to violate their rights under the First Amendment, and that verdict, after erroneously being set aside by the district judge, was reinstated on appeal.

In addition, the district judge ruled that no fee award to plaintiffs would be reasonable, on the theory that plaintiffs had little or no success because they did not receive injunctive relief other than that awarded in the government action and because that relief was of insignificant benefit to plaintiffs. As we discuss below, this evaluation is wholly at odds with the record. First, the injunction removed threatened discrimination against plaintiffs by subjecting the Village to significant restraints; indeed, in challenging the injunction on appeal, the Village argued that the district judge had "usurped the role of the local government," *LeBlanc–Sternberg II,* 1996 WL 699648, at *2. Second, had it not been for plaintiffs' winning a jury verdict in this action, thereby establishing the Village's liability, it is plain that the district judge would not have granted either plaintiffs or the government any relief whatever.

1. *The Significant Nature of the Injunctive Relief Granted*

The district judge seriously understated the significance of the injunction entered in this action and the government action. Although the district judge believed the injunction had no practical effect benefiting plaintiffs because they personally had not theretofore been stopped from conducting home worship services, it is plain that the injunction removed a substantial threat of such interference. The injunction, which is quoted and described in greater detail in Part I.B. above, not only prohibited the Village from taking any action in any way to deny housing or make housing unavailable to any person on the basis of religion, it also

• required the Village to amend its zoning code in specified ways to, *inter alia,* allow residential places of worship;

• enjoined the Village from interpreting its zoning code so as to obstruct assembly in residential dwellings for the purpose of group prayer; and

• enjoined the Village, along with its officers, employees, agents, and all those acting in concert or participation with them, from engaging in any conduct having the purpose or effect of perpetuating or promoting religious discrimination or of denying or abridging the right of any person to equal opportunity on account of religion.

This relief was plainly important in light of the jury's findings that the Village had violated plaintiffs' rights under the FHA and had conspired to violate their rights under the First Amendment, and in light of the supporting trial evidence (a) that ACA's principal purpose in pushing for the incorporation of the Village was to permit Airmont to adopt a zoning code that would curtail home synagogues; (b) that ACA and its members were intent on "harass[ing]" Orthodox and Hasidic Jews and did harass them, *see, e.g., LeBlanc–Sternberg I,* 67 F.3d at 420; (c) that ACA had its slate of candidates elected mayor and trustees of the Village; and (d) that the trustees appointed "the ever-vigilant, anti-[home synagogue] ACA member Montone," *id.* at 429, to the board that would interpret the Village's zoning code.

As we stated in *LeBlanc–Sternberg I,* the record contained "ample support for the jury's implicit finding that Airmont's zoning code would be interpreted to restrict the use of home synagogues, that the motivation behind the enactment [of that code] was discriminatory animus toward Orthodox and Hasidic Jews, and that Airmont pursued this goal jointly with ACA," *id.* at 431. And as we stated in affirming the injunction, that relief was "necessary to ensure that the Village could not hinder or prevent worship in homes." *LeBlanc–Sternberg II,* 1996 WL 699648, at *4.

■ Thus, the injunctive relief granted was significant for plaintiffs and for other Orthodox and Hasidic Jewish residents of Airmont as well. Moreover, as the district

judge himself stated, even while denying plaintiffs' motion for fees, the amendments to the zoning code "may be helpful to *any* new religious groups which desire to hold services in a private home in a residential area." Fee Decision at 8 (emphasis added). When a plaintiff obtains an injunction that carries a "systemic effect of importance" or serves a "substantial public interest," a substantial fee award may be justified. *Carroll v. Blinken,* 105 F.3d at 81. This is such an injunction.

### 2. *Plaintiffs' Role in Obtaining the Injunction*

Further, plaintiffs' role in obtaining this injunction was key. After the joint trial of this case with the government action, the district judge, on the basis of his own factual findings, entered judgment against the government and denied plaintiffs' equitable claims. And as we noted in *LeBlanc–Sternberg I,* had there been no jury verdict on the same issues, leaving the judge as the sole trier of fact, the judge would have been allowed to view the evidence in the light most favorable to the Village—as he plainly did. *See* 67 F.3d at 430. The jury's sufficiently supported verdict in favor of plaintiffs on their legal claims against the Village under the FHA and the First Amendment, however, foreclosed the district judge's contrary findings. *See id.* at 431–34. That verdict constituted collateral estoppel with respect to all of the facts common to plaintiffs' legal and equitable claims and all of the facts common to plaintiffs' claims and the government's claims.

Thus, plaintiffs' suit, far from being "*completely unnecessary*" (Village brief on appeal at 28 (emphasis in original)), proved to be essential, as the jury verdict won by plaintiffs against the Village was the foundation for both the granting of relief on plaintiffs' equitable claims and the granting of relief in the government action.

### 3. *What Relief Plaintiffs Had Sought*

■ The most important factor in determining a reasonable fee for a prevailing plaintiff is "the degree of success obtained." *Pino v. Locascio,* 101 F.3d at 237; *see, e.g., Farrar v. Hobby,* 506 U.S. at 114, 113 S.Ct.

at 574–75; *Hensley v. Eckerhart,* 461 U.S. at 436, 103 S.Ct. at 1941; *Carroll v. Blinken,* 105 F.3d at 81. In the present case, the district judge ruled that no fee was reasonable because plaintiffs attained "a most limited degree of success" as "compared to what the[y] had sought." Fee Decision at 10. Even assuming, however, that the phrase "degree of success" as used in the above cases refers merely to a comparison of the relief granted against the relief requested, *but see Hensley v. Eckerhart,* 461 U.S. at 433–37, 103 S.Ct. at 1939–41, and Part II.C.4. below, we have several difficulties with the district court's conclusions here, for the court not only, as discussed in Parts II.C.1. and 2. above, failed to recognize what was achieved and plaintiffs' key role in its achievement, but it also clearly erred in stating what relief plaintiffs had sought.

For example, in emphasizing plaintiffs' request for relief in the form of dissolution of the Village, the district judge erroneously stated that prior to this Court's decision in *LeBlanc–Sternberg I,* plaintiffs had made no request for other equitable relief. *See* Fee Decision at 7 ("[t]he only injunctive relief [plaintiffs] sought (prior to the Court of Appeals decision which focused on the Zoning Code) was the abolishment of the Village of Airmont and/or the return of Orthodox Jewish residential areas to the Town" (footnote omitted)). While dissolution was surely plaintiffs' most spectacular request, their substantive objection plainly was not to the existence of the Village *per se,* but rather to the Village's imminent discriminatory exercise of zoning power. Thus, their pleading, in a section entitled *"Nature of the Action,"* charged that the Village had been incorporated "with the express purpose of excluding or limiting the Orthodox Jewish population within the village by, among other things, imposing *burdensome zoning* and other restrictions upon Orthodox Jewish places of worship." (Second Amended Complaint ¶ 1 (emphasis added).) And from the outset plaintiffs sought, as an alternative to dissolution, "a permanent injunction *restraining Defendants* and all others acting in concert with them *from continuing their unlawful acts and conspiracy,* including, without limitation,

pursuing any further proceedings *with respect to the . . . zoning* of the Village." (*Id.* at 32, ¶ 1.b. (emphasis added).) Thus, the district judge's statement that the "only injunctive relief" plaintiffs had sought was dissolution of the Village is squarely contradicted by the record.

The record also belies the district judge's view that plaintiffs sought "primarily monetary damages of $1,000,000, plus punitive damages." Fee Decision at 7. As to compensatory damages, the Second Amended Complaint did not mention $1,000,000 or any dollar figure; rather, it requested only damages "in an amount to be determined at trial" (Second Amended Complaint at 32, ¶ 1.c.). And although plaintiffs apparently placed a $1 million value on their claims in response to a pretrial interrogatory, the Village has not cited us to any part of the trial record indicating that plaintiffs asked the jury for any given sum of money. Indeed, the record indicates the contrary. While plaintiffs contended before the jury that they had suffered compensable injury (hardly surprising, since the jury was to decide only claims for damages), plaintiffs' counsel began the trial by stating that "this case is about prayer. It's about people['s] desire to exercise what is the most basic form of religious freedom, the right to pray" (Trial Transcript at 16), and he asked the jury to award damages "in the amount you, the jury, feel[ ] appropriate for the amount of suffering and what [plaintiffs] had to endure in the deprivation of these rights" (*id.* at 41–42). Plaintiffs ended their trial presentation in the same vein, with their counsel stating that "this case [i]s about prayer" (*id.* at 5639) and disavowing extravagant monetary claims:

> You haven't heard the plaintiffs come in this courtroom and ask for stated sums of money.
>
> You didn't hear any of the plaintiffs tell you that they had filed this lawsuit because they wanted a million dollars, as you heard testimony about some other lawsuits.
>
> You didn't hear them come in here and ask for money in terms of stated amounts. That has been—in fact, if anything, has been played down to the point that one witness testified, "Yes, if I get anything at

all, I will donate it to the synagogue." They are not looking to profit, ladies and gentlemen, from this case.

(*Id.* at 5636–37). As the Village itself notes on this appeal, "the critical issue . . . in litigation was prayer services." (Village brief on appeal at 23.)

As to punitive damages, it is clear that the district judge erred in characterizing this as one of plaintiffs' "primar[ ily]" goals against the Village, Fee Decision at 7, for insofar as their claims against the Village were concerned, it was expressly not a goal at all. Plaintiffs' pleading requested an "award[ of] punitive damages against [certain] Defendants, *other than the Village.*" (Second Amended Complaint at 32, ¶ 1.e. (emphasis added).)

In sum, in exercising its discretion to deny plaintiffs' fee motion on the basis that their success against the Village was limited, the district court erred in concluding, *inter alia*, that plaintiffs had not prevailed on any issue critical or essential to their claims; that plaintiffs had not materially changed the legal relationship between themselves and the Village; that the injunctive relief granted was insignificant; that plaintiffs' success before the jury in establishing the Village's liability was of little consequence in the obtaining of any relief, either in this action or in the government action; that plaintiffs had asked for no injunctive relief other than dissolution of the Village; and that plaintiffs' primary goal, other than dissolution of the Village, was compensatory and punitive damages. We conclude that the denial of plaintiffs' motion for attorneys' fees was an abuse of discretion.

### 4. *Degree of Success—The Effects of Failed Claims*

■ In finding no fee reasonable, the district judge also stated that plaintiffs "were not prevailing parties against most of the defendants whom they sued originally and, indeed, were specifically the losing party with respect to five who went to trial individually and as Trustees," Fee Decision at 6, and that most of plaintiffs' attorneys' time had been devoted to claims that "involved defendants as to whom plaintiff[s] did not

prevail and claims for damages which were unsuccessful," *id.* at 10. The fact that plaintiffs did not prevail against other defendants, however, did not mean that no fee award was reasonable, for plaintiffs sought fees only against the Village, the party against which they plainly had prevailed.

█ Nor should a fee award have been denied on the ground that while securing a significant injunction against the Village, plaintiffs did not recover relief in the form of compensatory damages against that defendant. When a plaintiff has achieved substantial success in the litigation but has prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded. *See Hensley v. Eckerhart*, 461 U.S. at 433–37, 103 S.Ct. at 1939–41; *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir.1996). No fees should be awarded for time spent pursuing a failed claim if it was "unrelated" to the plaintiff's successful claims in the sense that it was "based on different facts and legal theories." *Hensley v. Eckerhart*, 461 U.S. at 434–35, 103 S.Ct. at 1940. On the other hand, if the plaintiff won substantial relief, and all of his claims for relief "involve[d] a common core of facts" or were "based on related legal theories," so that "[m]uch of counsel's time w[as] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," there should be a fee award for all time reasonably expended. *Id.* at 435, 103 S.Ct. at 1940.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... *Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.*

*Id.* (emphasis added).

*Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested.* For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

*Id.* n. 11 (emphasis added). The *Hensley* Court summarized as follows:

Where the plaintiff has failed to prevail on a claim that is distinct *in all respects* from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. *Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.*

*Id.* at 440, 103 S.Ct. at 1943 (emphasis added).

█ In the present case, the claims on which plaintiffs succeeded were based on the same core of facts and law as the failed damages claims against the Village and most of the failed claims against individual defendants not dismissed prior to trial. For example, plaintiffs' legal and equitable claims against the Village were clearly based on the same conduct and the same FHA and First Amendment principles. Indeed, the jury's verdict conclusively determined the underlying facts with respect to both sets of claims.

Similarly, plaintiffs' claims against the Village and their claims against the individual defendants who remained parties through trial were largely based on the same core of facts and law, for plaintiffs claimed a conspiracy among, *inter alios,* the Village and ACA; and all of those individual defendants were both ACA and Village officials. As the district judge noted in denying those defendants' pretrial motion to dismiss, plaintiffs' contention was that ACA had been formed and used by those individual defendants with the intent to discriminate against Orthodox and Hasidic Jews and that ACA "essentially became an instrument of the conspiracy." *LeBlanc–Sternberg v. Fletcher*, 781 F.Supp. 261, 273 (1991). The jury thereafter found

that the Village had in fact conspired to violate plaintiffs' rights, and that its coconspirator was ACA, see LeBlanc–Sternberg I, 67 F.3d at 431 (jury "implicit[ly]" found that "Airmont pursued this goal jointly with ACA"). Thus, the fact that attorney time was spent on claims that "involved," Fee Decision at 10, the five individual defendants who went to trial was not dispositive, for evidence against those defendants, who governed both members of the conspiracy, was necessarily involved in plaintiffs' successful conspiracy claim.

The record indicates that plaintiffs also asserted one or more claims that were not so related to their successful claims. For example, claims were initially asserted against the Town and its officials for interference with plaintiffs' right to vote; and one of the plaintiffs testified that one or more ACA officials had caused her to suffer physical injury. On remand, compensation should be denied to the extent that plaintiffs seek an award for services performed in pursuit of unrelated claims such as these, based on facts and legal theories different from the FHA and First Amendment claims; but it should not be denied for time necessarily spent pursuing claims that the individual defendants participated in the conspiracy that the jury found existed.

### D. Costs

██ "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." United States Football League v. National Football League, 887 F.2d 408, 416 (2d Cir.1989) (citing Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir.1987)), cert. denied, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). In this case, the district judge denied the expenses claimed by plaintiffs, including expenses for "duplicating, postage, telephone, computerized legal research and other office expenses," on the ground that "[m]ost of these would appear to be attorney's ordinary overhead and ... would not be normally charged to fee paying clients." Fee Decision at 10–11 (emphasis added). Many of the categories referred to, however,

are not properly treated as overhead expenses for purposes of a fee award but are the sort of expenses that may ordinarily be recovered. See, e.g., Kuzma v. Internal Revenue Service, 821 F.2d 930, 933–34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate."); Aston v. Secretary of Health and Human Services, 808 F.2d 9, 12 (2d Cir.1986) (postage, photocopying, travel, and telephone costs reimbursable under Equal Access to Justice Act, 28 U.S.C. § 2412); Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir.1995) (reproduction and postage expenses may be recovered under § 1988); see also United States ex rel. Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp., 95 F.3d 153, 173 (2d Cir.1996) (computerized research expenses recoverable as part of attorneys' fees, rather than as costs). On remand, the district court should reconsider plaintiffs' claim for expenses and articulate which expenses, if any, it deems not reimbursable.

### E. Proceedings on Remand

On remand, in addition to reconsidering the request for costs in accordance with the preceding section, the district court should calculate the amount of a reasonable fee to be awarded to plaintiffs in light of their substantial victory against the Village. The court should bear in mind that "[t]he function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel," Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir.1982), and that the fee awarded should therefore be "adequate to attract competent counsel," Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (internal quotation marks omitted).

██ The process of determining a reasonable fee ordinarily begins with the court's calculation of a so-called "lodestar" figure, which is arrived at by multiplying

"the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939; *see Cruz v. Local Union Number 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148, 1159 (2d Cir.1994). The lodestar should be based on "prevailing market rates," *Blum v. Stenson*, 465 U.S. at 895, 104 S.Ct. at 1547; and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment, *see Missouri v. Jenkins*, 491 U.S. 274, 283–84, 109 S.Ct. 2463, 2469–70, 105 L.Ed.2d 229 (1989). The court should include the number of hours claimed by plaintiffs' attorneys that are supported by time records, that are not excessive or duplicative, and that do not reflect work done only in connection with unrelated claims on which plaintiffs did not succeed, *see generally* Part II.C.4. above.

▇▇ The district court may adjust the lodestar figure—upward or downward—based on a variety of factors. *See, e.g., Hensley v. Eckerhart*, 461 U.S. at 434 & n. 9, 103 S.Ct. at 1940 & n. 9; *Orchano v. Advanced Recovery, Inc.*, 107 F.3d at 98; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). There is, however, "[a] strong presumption that the lodestar figure ... represents a 'reasonable' fee," *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *accord Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir.1994) (per curiam), for " '[i]f private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court,' " *Orchano v. Advanced Recovery, Inc.*, 107 F.3d at 99 (quoting S.Rep. No. 94–1011, at 2, *reprinted in* 1976 U.S.C.C.A.N. at 5910). In light of this presumption, if the court excludes claimed hours from the calculation of the lodestar figure or " 'augments or reduces th[at] figure it must state its reasons for doing so as specifically as possible,' " *Orchano v. Advanced Recovery, Inc.*, 107 F.3d at 99 (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir.1985)); *see Hensley v. Ecker-*

*hart*, 461 U.S. at 437, 103 S.Ct. at 1941 (district court should be sure to provide "a concise but clear explanation of its reasons for the fee award"), in order to permit adequate appellate review, *see Orchano v. Advanced Recovery, Inc.*, 107 F.3d at 99.

▇▇ Finally, we note a clerical matter that needs attention on remand. The final judgment entered in the present case did not spell out the terms of the injunction against the Village but stated merely that "plaintiffs' request for injunctive relief is granted to the extent of that set forth in the Order and Judgment in the case of *United States v. Village of Airmont, et al.*, 91 Civ. 8453 (GLG)." Order and Judgment dated April 25, 1996. We assume that, in order to comply with the requirements of the Federal Rules of Civil Procedure, the district judge caused a copy of the government-action injunction to be attached to the judgment in the present action. *See* Fed.R.Civ.P. 65(d) (order granting injunction shall describe acts restrained "in reasonable detail, and not by reference to ... other document"); *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986) (Rule 65(d) satisfied if document specifically describing proscribed acts is physically attached to the injunctive order). We make that assumption not only because of the requirement of the Rules, but also because the judgment that is in the record on appeal apparently previously had another document stapled to it. As the judgment is now found in the record, however, it is but a single page unstapled from its attachment. In order that the injunction granted in the present case comply with Rule 65(d), we direct that a copy of the injunction entered in *United States v. Village of Airmont, et al.*, 91 Civ. 8453(GLG), be physically appended to the judgment herein.

## CONCLUSION

In sum, in denying plaintiffs' motion for an award of attorneys' fees, the district court erred as a matter of law in ruling that plaintiffs had not prevailed on any issue essential to their claims against the Village and that the present lawsuit had not materially changed the relationship between plaintiffs

and the Village; and it plainly erred in, *inter alia*, finding that plaintiffs had achieved little or no success of any significance. Plaintiffs alleged that the Village violated their rights under the FHA and conspired to violate their rights under the First Amendment; the jury, in a fully supportable verdict, found in plaintiffs' favor. That verdict in favor of plaintiffs both enabled the government to obtain a favorable judgment in its own action and estopped the judge from finding against plaintiffs on their equitable claims in this action. Plaintiffs had asked for, *inter alia*, an injunction prohibiting the Village from engaging in such unlawful conduct and from conspiring to violate their civil rights by means of discriminatory zoning; thanks to the jury verdict in plaintiffs' favor, injunctions were entered in this action and the government action requiring the Village, *inter alia*, to amend its zoning code, to interpret that code in a way that permits home synagogues, and to refrain from discriminating on the basis of religion. This Court, in affirming the judgment containing the injunction, noted that the injunction was necessary to ensure that the Village would not hinder or prevent home synagogues. The record permits no rational conclusion other than that plaintiffs are prevailing parties against the Village to a very significant extent.

We have considered all of the Village's contentions in support of the decision below and have found them to be without merit. The order of the district court is vacated insofar as it denied plaintiffs' motion for attorneys' fees and costs, and the matter is remanded for the calculation of reasonable fees and costs consistent with this opinion.

Plaintiffs are awarded costs and attorneys' fees in connection with this appeal. *See, e.g., Orchano v. Advanced Recovery, Inc.,* 107 F.3d at 101.