# United States Court of Appeals for the Fifth Circuit

———————

No. 23-40094

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 15, 2025

Lyle W. Cayce
Clerk

James Ethridge,

*Plaintiff—Appellant*,

*versus*

Samsung SDI Company, Limited,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:21-CV-306

———————————————————————

ON PETITION FOR REHEARING
AND REHEARING EN BANC

Before King, Jones, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

IT IS ORDERED that the petition for panel rehearing is GRANTED. The court's prior panel opinion is WITHDRAWN, *see Ethridge v. Samsung SDI Co.*, 137 F.4th 309 (5th Cir. 2025), and the following opinion is SUBSTITUTED therefor.

This panel previously held a federal court sitting in Texas could exercise personal jurisdiction over Samsung SDI after a battery it

1

No. 23-40094

manufactured injured James Ethridge in Texas. *See Ethridge*, 137 F.4th at 323. Since then, the Seventh Circuit has addressed the same question—but with the benefit of jurisdictional discovery. *See B.D. ex rel. Myers v. Samsung SDI Co.*, 143 F.4th 757 (7th Cir. 2025). After reconsideration in light of *Myers*, we affirm the district court's dismissal for lack of personal jurisdiction.

\*

*Myers* is materially indistinguishable from our case: A resident plaintiff injured in the forum State brought suit against Samsung SDI for injuries arising from an exploding 18650 battery sold outside the forum State.[*] Critically, though, the litigation in that case provided a more fulsome explanation of Samsung's business model after a remand for jurisdictional discovery. *See B.D. ex rel. Myers v. Samsung SDI Co.*, 91 F.4th 856, 864 (7th Cir. 2024) (per curiam). In relevant part, the court described Samsung's "steps to ensure its customers use 18650 batteries only for approved purposes." *Myers*, 143 F.4th at 763. Those steps include, among other things, requiring customers to submit "purchase application[s]" that Samsung would deny if would-be customer disclosed "ties to the e-cigarette industry." *Ibid.* These are crucial facts because personal jurisdiction doctrine has long considered whether a defendant has "'structure[d] its primary conduct' to

---

[*] There is a veritable cottage industry of personal jurisdiction litigation in cases arising out of exploding batteries manufactured by foreign companies after use in e-cigarettes. Both federal, *see, e.g.*, *Myers*, 143 F.3d 757; *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651 (6th Cir. 2023); *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023); *Durham v. LG Chem, Ltd.*, Nos. 21-11817, 21-11821, 2022 WL 274498 (11th Cir. Jan. 31, 2022) (per curiam), and state courts, *see, e.g.*, *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341 (Tex. 2023); *Dilworth v. LG Chem, Ltd.*, 355 So. 3d 201 (Miss. 2022), have struggled to apply *Ford*'s relatedness test in this context. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021). As evidenced by that division and our own reconsideration in this case, the task is difficult and divides able and fair-minded jurists. *See also id.* at 374–75 (Alito, J., concurring) (identifying the "potentially boundless reach of 'relate to'" as a challenge for the "lower courts").

2

lessen or avoid exposure to a given State's courts." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). And the Seventh Circuit's decision turned on them: The court held that "[b]ecause Samsung SDI structured its activities to ensure only encased 18650 batteries reached consumers in Indiana, it was not on 'clear notice' that it would have to answer for injuries occasioned by consumers obtaining individual batteries." *Myers*, 143 F.4th at 771–72.

Before this panel, by contrast, Samsung emphasized that it markets 18650s to corporate clients in Texas. *See* Red Br. at 7. But the company said *nothing* about its prior-authorization contracts and the specific steps it takes to deny all sales to anyone affiliated with e-cigarette manufacturers. The most Samsung told our panel was a single sentence buried in a lengthy footnote. That single sentence said (without elaboration) that Samsung "takes careful steps through its relationships with packers and manufacturers to only supply 18650 cells in sealed battery packs for approved products." *Id.* at 21 n.4. Even then, however, Samsung cited nothing in the record; did nothing to explain what it meant by "approved products"; and otherwise left us to guess what its "careful steps" included.

As another panel from the Seventh Circuit once memorably put it, "[j]udges are not like pigs, hunting for truffles buried in the record." *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (Easterbrook, J.) (quotation omitted); *see also United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam) (same). Nevertheless, we have never been limited to the precise arguments raised by the lawyers before us. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather

retains the independent power to identify and apply the proper construction of governing law.").

Therefore, with the aid of the *Myers* opinion, we went hunting through the record before us. And lo and behold, we found the truffle. In an uncited paragraph of a declaration, Samsung describes the "great lengths" it goes to prevent consumers like Ethridge from obtaining its batteries. ROA.644. That includes a detailed "customer vetting process" in which prospective customers must apply to purchase 18650 batteries. ROA.645. Samsung then rejects any applications with connections to the e-cigarette industry. *Ibid.* Both its website and product packaging include warnings about the risk of serious injury or death resulting from consumer usage. *Ibid.* Thus, Samsung has structured its contracts and its forum contacts to prevent personal-injury suits like Ethridge's. *See Ford*, 592 U.S. at 360. It hardly seems economical to invest en banc or certiorari resources to address a circuit split where our panel majority opinion turned on counsel's failure to alert us to facts lying dormant in the record.

Nothing in this opinion should be construed as answering whether the precise measures Samsung took to sell its products only to the industrial market create a necessary baseline for specific personal jurisdiction cases like this one. It is enough to say that Samsung affirmatively limited its contacts to approved manufacturers in Texas, and Ethridge has not shown that his injuries are related to those contacts. *See Ethridge*, 137 F.4th at 334–35 (Jones, J., dissenting) ("In this case, there is no link between Samsung's sales of goods to manufacturers and the plaintiff's injuries, which arose from a direct-to-consumer purchase and involved distribution channels that Samsung did not participate in and never authorized . . . . *Ford* does not authorize States to exercise personal jurisdiction over out-of-state defendants because of the unilateral acts of plaintiffs or third parties.").

No. 23-40094

\*

Of course, because the district court dismissed Ethridge's claims without prejudice, *see* ROA.1097, he may bring his suit again and plead additional facts that could support jurisdiction. *See* Fed. R. Civ. P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001) ("The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim."). But on the record before us, we agree with the Seventh Circuit that Ethridge has not satisfied *Ford*'s standard for personal jurisdiction.

AFFIRMED.

No. 23-40094

Per Curiam:

The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 40 and 5th Cir. R. 40).

In the en banc poll, 5 judges voted in favor of rehearing (Jones, Smith, Richman, Ho, and Engelhardt), and 11 judges voted against rehearing (Elrod, Stewart, Southwick, Haynes, Graves, Higginson, Willett, Duncan, Wilson, Douglas, and Ramirez).[*]

---

[*] Judge Oldham's participation is not reflected because the panel granted rehearing. *See* Fed. R. App. 40(a) ("Panel rehearing is the ordinary means of reconsidering a panel decision; rehearing en banc is not favored."); 5th Cir. R. 40 I.O.P. ("*Panel has control*—Although each panel judge and every active judge receives a copy of the petition for rehearing en banc, the filing of a petition for rehearing en banc *does not take the case out of the control of the panel* deciding the case. A petition for rehearing en banc is treated as a petition for rehearing by the panel if no petition is filed. The panel may grant rehearing without action by the full court." (capitalization omitted; emphases added)).