**Stephen PATTERSON, Plaintiff,**

v.

**Timothy JULIAN, Individually, and as Mayor of the City of Utica; and City of Utica, Defendants.**

**No. 01–CV–1725.**

United States District Court,
N.D. New York.

March 14, 2003.

---

Leon R. Koziol, Esq., Utica, NY, for Plaintiff.

Office of the Corporation Counsel, for the City of Utica, Utica, NY (John W. Dillon, Esq., John P. Orilio, Esq., Joseph P. Giruzzi, Esq., Of Counsel), for Defendants.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. FACTUAL BACKGROUND

Plaintiff Stephen Patterson ("plaintiff") brought suit against defendants Timothy Julian, Individually, and as Mayor of the City of Utica ("Mayor Julian"), and the City of Utica ("the City of Utica"), alleging six causes of action:

*First*—Termination and hostile work environment based on his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.;*

*Second*—Pursuant to 42 U.S.C. § 1981, denial of equal opportunities in violation of the equal protection and due clauses of the Fourteenth Amendment;

*Third*—Pursuant to 42 U.S.C. § 1983, retaliation for the exercise of First Amendment rights, failure to provide a name-clearing hearing or restoration of employment in violation of property and liberty interests guaranteed by the Fourteenth Amendment;

*Fourth*—Pursuant to 42 U.S.C. § 1985, conspiracy to deprive plaintiff of constitutional protections on the basis of his race;

*Fifth*—Deprivation of rights guaranteed by New York Human Rights Law § 296;

*Sixth* -Slander and libel pursuant to common law. (Complaint, Docket No. 1, ¶¶ 30–46). Plaintiff, prior to trial, stipulated to the discontinuance of his *First, Fourth, Fifth,* and *Sixth* causes of action. (*See* Docket No. 22).

Taken from the Complaint, the following are the facts upon which plaintiff based his claims. Plaintiff, an African–American, after working for the City of Utica for some period of time, was appointed to the position of Commissioner of Public Works by former Mayor Edward Hanna. In this position, plaintiff claims he was subject to a racially hostile environment by various employees of the City of Utica. Plaintiff claims Mayor Hanna made no response when informed of said environment, and plaintiff instead "was berated and made subject to undeserved controversies surrounding his leadership position so as to compel an involuntary resignation or grounds for discharge." (Complaint, Docket No. 1, ¶ 15).

Plaintiff claims he was unlawfully terminated from his position as Commissioner of Public Works on four occasions. Upon returning after the first termination, plaintiff alleged that various agents of the City of Utica monitored his private life, and then fired him on the basis of false allegations of criminal wrongdoing. Plaintiff was rehired again, but alleged that the damage to his reputation was permanent. Plaintiff alleged that former Mayor Hanna was aware of all of these events, but made no effort to investigate. Plaintiff was fired again after Mayor Julian took office. Plaintiff alleged that he was given no means to defend himself. Plaintiff alleged that Mayor Julian, or individuals acting on his behalf, began distributing false statements about plaintiff to community leaders as a way to justify the termination, and making public statements about improper drug use in the department in which plaintiff had worked. Plaintiff alleges that at no time as to each firing by Mayors Hanna and Julian, was he provided an opportunity to clear his name.

On December 2, 2002, a five-day jury trial commenced. After closing arguments, the jury was presented with a "Verdict Form," asking them to answer questions relating to three different types of claims. (Verdict Form, Docket No. 31). Under the heading "Race Discrimination Claims—Section 1983," the jury was asked three questions. The first question asked whether the City of Utica discriminated against plaintiff on the basis of his race in terminating him on four separate occasions. The second question asked whether the City of Utica discriminated against plaintiff on the basis of his race with regard to a hostile work environment. The third question asked whether Mayor Julian discriminated against plaintiff on the basis of his race in terminating plaintiff on one occasion. The jury answered no to all three questions in favor of the defendants.

Under the heading "Due Process Claims—Fourteenth Amendment," the jury was asked whether the City of Utica made false and stigmatizing statements

that damaged plaintiff's reputation and foreclosed his employment opportunities, and that were close in time to plaintiff's termination. Because the jury answered in the affirmative on the question, they were then asked whether the City of Utica failed to provide plaintiff with a name-clearing hearing, and whether this failure was a proximate cause of damages to plaintiff. The jury answered in the affirmative to both of these questions as well. The same exact questions were posed with respect to Mayor Julian. While the jury found that Mayor Julian did, indeed, make false and stigmatizing statements that were damaging to plaintiff, they found that he did not fail to provide plaintiff with a name-clearing hearing. The answers by the jury were in favor of the plaintiff and against the City of Utica, but in favor of Mayor Julian.

Under the heading "Free Speech Retaliation Claim—First Amendment," the jury was asked whether the City of Utica altered plaintiff's terms and conditions of employment in retaliation for plaintiff's exercise of his First Amendment rights. The jury answered no to this question in favor of the defendants.

For the City of Utica's due process violation, the jury awarded plaintiff $16,167.00 in loss of earnings, $218,250.00 for emotional distress and/or loss of reputation to date, and $48,500.00 for future emotional distress and/or loss of reputation, this latter award to cover two years, for a total award of $282,917.00. Defendants thereafter moved for a motion to dismiss pursuant to Fed.R.Civ.P. 50 (Docket No. 33), and plaintiff moved for judgment as a matter of law for his claims on which the jury found in defendants' favor (Docket No. 37). Both motions were denied. (Docket No. 46).

Plaintiff thereafter moved for attorney's fees pursuant to 42 U.S.C. § 1988, attach-ing time records for work performed in connection with the case. (Docket Nos. 48 and 49). Defendants opposed. (Docket Nos. 51 and 52). This motion, taken on submit with no oral argument, is the subject of this Order.

## II. DISCUSSION

"[A]bsent explicit statutory authority," plaintiffs and defendants "are ordinarily required to bear [their] own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. and Home Care, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Among the statutes authorizing the award of attorney's fees is 42 U.S.C. § 1988 (" § 1988"), which provides, in relevant part, "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee as part of the costs[.]" As the language indicates, in order to recover, a moving party must establish both: (1) eligibility to a fee award ("prevailing party" status); and (2) entitlement to a fee award ("reasonableness" of the award sought). *See Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir.1996). Here, there is no dispute that plaintiff is a prevailing party, and is thus eligible for a fee award. The parties do differ, however, as to the reasonableness of the award sought.

As noted, plaintiff is entitled only to a "reasonable" fee. *See Pino*, 101 F.3d at 237. The fee to be awarded to the prevailing party is based on the "lodestar" figure, "which is arrived at by multiplying the 'number of hours reasonably expended on the litigation ... by a reasonable hourly rate.'" *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir.1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct.

1933, 76 L.Ed.2d 40 (1983)); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997).

## A. Initial Lodestar Calculation

### 1. Hours Expended

■ To demonstrate the hours claimed, plaintiff is required to submit detailed time records that demonstrate "the date, the hours expended, and the nature of the work done." *New York State Assn. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). These records need not be actually contemporaneously made, so long as they are at least based on contemporaneously created records. *See Cruz v. Local Union No. 3 of Intl. Brotherhood of Electrical Workers*, 34 F.3d 1148, 1160 (2d Cir.1994). " '[E]xcessive, redundant, or otherwise unnecessary' " hours claimed will not figure in to the lodestar equation. *See Gierlinger*, 160 F.3d at 876 (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933).

Plaintiff is seeking a fee award in the sum of $79,295.00 based upon 294 out-of-court hours at $225.00 per hour and 47.8 in-court hours at $275.00 per hour. The total hours of work is 341.8. (*See* Docket No. 49, Exh. A).

### a. Defendants' Challenges

Of the 93 itemized time entries submitted, defendants claim 11 are " 'excessive, redundant or otherwise unnecessary.' " (See Memorandum of Law in Response to Plaintiff's Post Trial Motion for Attorney Fees, Docket No. 51). Defendants' challenges are rejected.

■ While most of the rejections of defendants' challenges require no elaboration, a few warrant some discussion. Three of the eleven challenges are for entries "involv[ing] an unrelated administrative proceeding." (*Id.*). Notwithstanding the fact that administrative proceedings certainly could or do relate to the instant case or were a necessary prerequisite thereto, defendants, in their challenges, placed some entries out of context. In other words, defendants challenged the hours expended but only mentioned part of the entries. For example, defendants claim "[t]he 9/6/01 entry of 4.5 hours for Consultation regarding EEOC status involved an unrelated administrative proceeding." (*Id.*). Had the entry been only as described by defendants, an argument of excess may be well-founded. However, the full text of the challenged entry reads as follows: "Consultation re: EEOC status, strategy discussions, telephone with potential witnesses and review of matters pending before govt. agencies, review of cases relating to Title VII timelines and filings." (Aff. in Support of Application for Counsel Fees and Costs, Docket No. 49, Exh. A, entry dated 9/6/01). Defendants' practice in this regard is repeated in the challenges to the other entries.

■ Defendants also claim "[t]he 10/26/01 entry for 3.3 hours for review of audiocassettes is unnecessary inasmuch as no tapes were introduced into evidence or provided to counsel through the discovery process." (Docket No. 51). The entry actually notes that the review was performed to determine the "possible evidentiary" value of the cassettes, and the remainder of the entry mentions "discussions with witnesses and clients." (Docket No. 49, Exh. A, entry dated 10/26/01). Thus, it is neither excessive nor unnecessary.

■ Defendants also challenge "[t]he 11/8/01 entry for 2.8 hours regarding unrelated matter regarding the Mayor that was not part of this case." (Docket No. 51). However, it was a possibility, if not a certainty, that the Mayor would be testifying in the case and therefore have his

testimony and even credibility subject to attack.

### b. *Excessive, Redundant or Unnecessary Hours Claimed*

While defendants' specific challenges to entries are rejected, other entries for hours claimed by plaintiff will be excluded or reduced as excessive, redundant or unnecessary. First, an entry dated 10/22/01 claims 3.6 hours for "[c]onsultation, preparations for litigation." (Docket No. 49, Exh. A). This entry is woefully inadequate and vague, and no illumination is shed on its meaning when looking at the surrounding entries. In fact, the surrounding entries seem to confirm this entry's vagueness, as they are much more specific. Accordingly, this entry for 3.6 hours is entirely excluded from the initial lodestar as vague.

Second, plaintiff claims a total of 8.3 hours were devoted to the drafting, review and filing of the Complaint, with 5.7 hours claimed for "[p]reparation of pleadings and exhibits," and 2.6 hours for the "[r]eview and filing of complaint with client and staff." (*Id.*). While plaintiff is given the benefit of the doubt on the 5.7 hours, reviewing and filing a complaint should under almost no circumstances take over two and a half hours. Plaintiff is given credit for just one hour of his lawyer reviewing the complaint with him and filing it. Accordingly, 1.6 hours are excluded from the lodestar calculation as excessive.

Third, plaintiff claims 5.6 hours for the "[l]egal research of 31 separate defenses set forth in city's answer together with client consultation by telephone, including examination of an original Notice of Examination in an unrelated city case erroneously included among defendant's demands." (*Id.*). Many of these thirty-one defenses are typical boilerplate defenses raised in nearly all answers to complaint. Still more are simply denials of a series or theory of facts alleged by plaintiff in his Complaint. Plaintiff's counsel goes to great lengths to tout his years of experience as a civil rights attorney. Surely legal research was not required to investigate, for example, the defendants' affirmative defenses that plaintiff worked in an unclassified position and could be fired at will; or that plaintiff was a non-union member without a vested property right in his government employment; or that although no grounds were needed to fire plaintiff, valid grounds existed. While factual investigation was perhaps needed to determine whether plaintiff mitigated his damages, legal research need not have been conducted. Further, one defense asserted is that the action is barred by the statute of limitations. While this was indeed an issue worthy of exploration, plaintiff's entry dated 9/6/01 already claimed this research. However, as some exploration and client consultation of the defenses raised is appropriate, the 5.6 hours claimed will be reduced to 3.0 hours. Accordingly, 2.6 more hours are excluded from the lodestar calculation.

Fourth, per entries dated 11/13/02, 11/14/02, and 11/15/02, plaintiff claims a total of 23.5 hours for matters relating to the preparation of trial submissions. Presumably, these efforts are reflected in plaintiff's proposed jury voir dire (Docket No. 13), court-ordered voir dire (Docket No. 14), proposed jury instructions (Docket No. 15), witness list (Docket No. 16), and exhibit list (Docket No. 17). While all are certainly competently prepared, it seems excessive to attribute 23.5 hours to their making. The proposed voir dire lists only twenty-three basic overall questions. The court-ordered voir dire required plaintiff to merely give names, addresses, witnesses, and a brief description of the events in question. The witness list

listed twenty-three names with a very short description as to the likely substance of the persons' testimony. The exhibit list was approximately a two-page, double-spaced general list of possible exhibits. Granted, preparing these submissions certainly do require attention and some time, but not 23.5 hours worth. In short, aside from the proposed jury instructions, which, though certainly not original, are an integral submission and deserve more lengthy attention, the claimed hours are excessive. Accordingly, another 7.0 hours will be reduced from the initial lodestar calculation.

Fifth, the entries relating to "trial preparations" are similarly excessive. By entries dated 11/27/02, 11/29/02, 11/30/02, and 12/1/02, plaintiff claims a total of 29.9 hours were devoted to matters involving trial preparation. There is no dispute that preparing for trial is a cumbersome and important process, as attention to fine detail is the mark of any great trial lawyer. However, this was not a terribly difficult or complex case, and spending, for example, 7.1 hours on preparing plaintiff for his testimony, video analysis of plaintiff's demeanor, and review of plaintiff's deposition transcript is unwarranted. Because trial preparations are important, though, to the success of the litigation, and because all of the tasks claimed are valid, the 29.9 hours will be reduced only by five hours. Accordingly, another 5.0 hours are excluded from the initial lodestar calculation.

Sixth, plaintiff's claim, by entries dated 12/18/02, 12/19/02, and 12/20/02, for 17.0 hours relating to the preparation and submission of a post-trial motion is also excessive. Plaintiff's post-trial motion itself is just over a page long, and essentially lists four grounds upon which the motion is premised. (*See* Motion for Judgment as a Matter of Law, Docket No. 37). Attached to the motion is a six-page affidavit signed by plaintiff, which con-

tains paragraphs amounting to his view of the evidence presented at trial. Plaintiff's memorandum of law supporting his post-trial motion is approximately three pages long, cites five cases, and contains three substantive paragraphs wherein the evidence submitted at trial is discussed and arguments are advanced. (*See* Memorandum of Law in Support of Plaintiff's Motion for Judgment as a Matter of Law, Docket No. 38). It is difficult to imagine that preparing this material required nearly twelve hours of work. In addition, plaintiff's post-trial motion was totally without merit. Nonetheless, assuming that the trial transcript was pored over, only 12.0 hours will be deducted from the initial lodestar calculation for these entries.

Finally, plaintiff's entry of 2.7 hours relating to the review of the case with plaintiff and his family is excessive and unnecessary. While it is no doubt true, and laudable, that an attorney should summarize the events relevant to the case with the client, 2.7 hours are not needed. The time entries reflect that plaintiff and his attorney were in near constant "consultation" throughout the periods before, during, and after the trial, so it stands to reason that plaintiff was kept fully apprised of all events. The date of the entry, 1/17/01, is the same day that all parties' post-trial motions were summarily denied. Because, however, some review and consultation was necessary as to the next step, if any, in the process, and perhaps for an overall summary of what occurred at the trial court level, only 1.0 hours will be deducted from the initial lodestar calculation for this entry.

None of the remaining hours claimed are facially excessive, redundant, or otherwise unnecessary to the reasonable preparation and conduct of a litigation. In sum, a total of 32.8 hours will be deducted from

the 341.8 hours claimed by plaintiff. Thus, for the purposes of the initial lodestar calculation only—i.e., without regard to whether these hours will be further reduced for other reasons, *see infra*—309 hours are accepted.

### 2. *Reasonable Hourly Rate*

■ It is well established that the reasonable hourly rate for an attorney is that which falls within the relevant marketplace rate "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Plaintiff argues that the reasonable rate in this case is $225.00 per hour for out-of-court services and $275.00 per hour for in-court services. (Docket No. 49, ¶ 6). Though not "indispensable," plaintiff submits no affidavits of similarly situated attorneys to support this rate. *See Cruz*, 34 F.3d at 1160. Nor does plaintiff submit a memorandum of law or cite any case law whatsoever that indicates the reasonable rate of an experienced civil rights attorney in the Northern District of New York is $225.00 per hour for out-of-court services and $275.00 per hour for in-court services. Defendants argue that if plaintiff is to be awarded any fees at all, it should be at a rate of $100.00 per hour. (Docket No. 51).

■ A review of recent case law quickly reveals that both the plaintiff and defendants are wrong, and that the prevailing rate is $175.00 per hour. *See People ex rel. Vacco v. Rac Holding, Inc.*, 135 F.Supp.2d 359, 363 (N.D.N.Y.2001); *I.B.E.W. Local No. 910 Welfare, Annuity, and Pension Funds ex rel. Love v. Dexelectrics, Inc.*, 98 F.Supp.2d 265, 275 (N.D.N.Y.2000); *Plumbers, Pipefitters and Apprentices Local Union No. 112 Pension, Health and Educational and Apprenticeship Plans ex rel. Fish v. Mauro's Plumbing, Heating and Fire Suppression, Inc.*, 84 F.Supp.2d 344, 356 (N.D.N.Y. 2000); *Sheet Metal Division of Capitol District Sheet Metal, Roofing & Air Conditioning Contractors Assn., Inc. v. Local Union 38 of Sheet Metal Workers Intl. Assn.*, 63 F.Supp.2d 211, 213 (N.D.N.Y. 1999); *Carroll v. DeBuono*, 48 F.Supp.2d 191, 194 (N.D.N.Y.1999); *EEOC v. J.B. Hunt Transp., Inc.*, available at 2001 WL 1217201, at *5 (N.D.N.Y. Sep. 27, 2001). No compelling reason has been offered to increase or decrease the rate. Therefore, the reasonable hourly rate is $175.00 per hour for both in-court and out-of-court hours.

■ Of the hours claimed by plaintiff, some must be attributed to "travel time" relating to plaintiff's counsel's appearance in Syracuse for argument on a discovery-related motion. The specific entry, dated 9/30/02, claims 4.5 hours for "Oral Argument on Discovery Motion in Syracuse." (Docket No. 49, Exh. A, entry dated 9/30/02). Because plaintiff, the party bearing the burden of establishing fee entitlement, failed to differentiate between how much of the 4.5 hours was spent traveling and how much was spent arguing the motion, half (2.25 hours) will be calculated as travel time. Travel time is generally reimbursed at half of the hourly prevailing rate. *See, e.g., Funk v. F & K Supply, Inc.*, 43 F.Supp.2d 205, 230 (N.D.N.Y. 1999). Thus, these 2.25 hours will be calculated at a rate of $87.50 per hour. The remaining 306.75 hours will be calculated, for initial lodestar calculation purposes, at a rate of $175.00 per hour.

### 3. *Initial Calculation*

Plaintiff receives an initial credit of 309.0 hours, with 2.25 of those hours devoted to travel time. As a result, 306.75 hours multiplied by a reasonable hourly rate of $175.00 per hour results in the

initial lodestar figure of $53,681.25. Multiplied by half of the reasonable hourly rate of $87.50 per hour, the 2.25 hours attributable to travel time result in the initial lodestar figure of $196.87. The total initial lodestar figure is thus $53,878.12. This initial figure is presumptively considered the "reasonable fee," but certain other considerations ("reductions") can result in a reduction or even increase of the figure. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

### B.   *Reduction for Limited Success*

Defendants essentially contend that any fee award received should be reduced further because of plaintiff's limited success at trial. While success rate has no bearing on prevailing party status, it does retain relevance in determining whether a reduction is appropriate. *See Carroll,* 42 F.3d at 129; *see also Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Indeed, a plaintiff's success rate is considered "the most critical factor" in determining a fee's reasonableness. *See Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *DeCarlo v. Perales,* 963 F.Supp. 181, 184 (N.D.N.Y.1997). Partial failure may result in a reduction, but not by strict proportionality, that is, reducing the fee award by the percentage of the total claims attributable to the unsuccessful claims, which has been rejected as inconsistent with Congressional intent by the Supreme Court. *See City of Riverside v. Rivera,* 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

Reduction for limited success may not be appropriate at all if the successful and unsuccessful legal claims "involve a common core of facts or [are] based on related legal theories." *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933; *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 762 (2d Cir.1998); *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir.1992). Further, where much time is devoted to the litigation as a whole, making the division of time among the successful and unsuccessful claims particularly difficult, a downward reduction is less appropriate. *LeBlanc–Sternberg,* 143 F.3d at 762; *Reed v. AW Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir.1996); *Mendoza v. City of Rome,* 162 F.R.D. 260, 263 (N.D.N.Y.1995) ("The tasks performed during any hours expended on unsuccessful claims served multiple claims and were legally and factually intertwined").

Here, plaintiff prevailed on only one claim against only one defendant. At trial, the jury was faced with three separate types of claims: (1) race discrimination: (2) due process violations; and (3) free speech retaliation—against the City of Utica and Mayor Julian. With regard to the race discrimination claims, the jury was asked whether both the City of Utica and Mayor Julian treated plaintiff adversely due to his race with regard to his termination. The jury answered in the negative for both defendants. The jury was also asked whether the City of Utica treated plaintiff adversely due to his race with regard to a hostile work environment. The jury answered in the negative. With regards to the due process claims, the jury was asked whether both the City of Utica and Mayor Julian made statements damaging plaintiff's reputation and foreclosing his employment opportunities. The jury answered in the affirmative for both defendants, but found only that the City of Utica failed to provide plaintiff with a name-clearing hearing and proximately caused plaintiff damage. With regard to the free speech retaliation claim, the jury was asked whether the City of Utica negatively altered plaintiff's terms and conditions of employment in retaliation for plaintiff's exercise of free speech rights.

The jury answered in the negative. Thus, the jury rendered verdicts on six separate claims. Only one of these claims was found by the jury to have any merit. Success, in every sense of the word, was attained on only one claim, and may be described as limited. However, plaintiff did receive a substantial monetary verdict on the due process claim upon which he did prevail in the sum of $282,917.00.

The due process claims against both the City of Utica and Mayor Julian, certainly were factually and legally intertwined. The question becomes, therefore, whether these claims were factually and legally intertwined with the other unsuccessful claims. Clearly, the due process claims are legally distinct. Specifically, the race discrimination claims involved determining whether race motivated three separate terminations, and whether it caused a hostile work environment. The free speech retaliation claim involved determining whether retaliation occurred for the exercise of First Amendment rights. The due process claims centered around false, stigmatizing statements, and whether the defendants provided plaintiff with a name-clearing hearing to remediate the same. The due process claims had nothing to do with plaintiff's race, and had nothing to do with the exercise of his First Amendment rights.

However, the unsuccessful claims do have some degree of factual intertwinement with the due process claims. At least some arise out of the same course of events—i.e., plaintiff being berated and fired on the spot. Thus, because, for example, witnesses often offered testimony pertinent to more than one claim, some claimed hours are not capable of division and must be considered as a whole. However, as the intertwinement is not complete, legally or factually, some limited reduction for plaintiff's success against only one defendant on only one claim is appropriate.

Next, the determination needs to be made as to how much to reduce the initial lodestar figure due to plaintiff's limited success with regard to the individual claims, but substantial success with regard to the monetary recovery. Because the same defendants were involved in all of the claims, the hours claimed could reasonably be seen as applying to any of plaintiff's claims, and are therefore incapable of proper separation or elimination. Therefore, it is here found that an across the board percentage reduction is appropriate. No aid is given by the parties, and none is expected or perhaps even reliable, as to the relative weight of the three overall claims. One could go through the hours claimed and attempt to divide hours appropriately. However, such ventures necessarily involve assumptions, such as assumptions involving the division of time an hour was spent on particular claims, that may not necessarily be warranted. Rather than engage in such guesswork, thereby toeing the fine line of strict proportionality found to be incompatible with the purpose of § 1988, it is here found to be more appropriate to reduce the lodestar amounts by only one-tenth (10%). This relatively small reduction is due to the fact that although plaintiff attained success on only one of many claims, he attained an impressive monetary success on that one claim.

### C. *Expenses*

■ An addition to the fee award is the $2,413 claimed by plaintiff as costs and disbursements. (Docket No. 49, Exh. A). "'Attorney's fee's awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *LeBlanc–Sternberg*, 143 F.3d at 763 (quoting *United*

*States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989)). Defendants have not objected to plaintiff's claim for expenses.

## III. *CONCLUSION*

The following is the final fee award:

| | |
|---|---:|
| Hourly Rate | $ 175.00 |
| Reasonable Hours | x 306.75 |
| | $53,681.25 |
| Reduction (10%) | − 5,368.12 |
| Total | $48,313.13 |
| Hourly Rate | $ 87.50 |
| Travel Hours | x 2.25 |
| | $ 196.87 |
| Reduction (10%) | − 19.68 |
| Total | $ 177.19 |
| Expenses | $ 2,413.00 |
| Total Reasonable Hours | $48,313.13 |
| Total Travel Hours | 177.19 |
| Expenses | + 2,413.00 |
| TOTAL FEES AND EXPENSES | $50,903.32 |

In view of the jury verdict which awarded $282,917.00 to the plaintiff but dismissed all claims against Mayor Julian and all but one claim against the City of Utica, this total award is fair and reasonable. It recognizes the substantial achievement of the plaintiff and the inherent difficulties to all attorneys in pursuing civil rights litigation on behalf of often indigent clients. It also recognizes the success of the defendants in defending most of the charges.

Accordingly, it is

ORDERED that

1. Based upon the jury verdict:

a. Plaintiff Stephen Patterson is entitled to a judgment against defendant City of Utica in the sum of $282,917.00; and

b. Defendant Mayor Timothy Julian is entitled to a dismissal of the Complaint;

2. Plaintiff's motion for attorney's fees and expenses is GRANTED in the sum of $50,903.32, as against defendant City of Utica.

The Clerk is directed to enter judgment in favor of plaintiff Stephen Patterson against defendant City of Utica in the sum of $333,820.32 and dismiss the Complaint against defendant Mayor Timothy Julian.

IT IS SO ORDERED.