Roderick PLUMMER, Raymond W. Armorer, Neville Caesar, and all others similarly situated, Plaintiffs,

v.

CHEMICAL BANK, Defendant.

No. 80 Civ. 7364 (WCC).

United States District Court, S.D. New York.

Aug. 28, 1984.

Dinerstein & Lesser, P.C., Jericho, N.Y., for plaintiffs Raymond W. Armorer and Neville Caesar; Alan R. Aledort, Jericho, N.Y., of counsel.

Silverman & Harnes, New York City, for objectors Herman Taitt and Louis Straker; Sidney B. Silverman, Joan T. Harnes, New York City, of counsel.

Epstein, Becker, Borsody & Green, P.C., New York City, for defendant Chemical Bank; Ronald M. Green, Susan Schenkel-Savitt, Carol S. Bernheim, Dale E. Callender, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge.

On January 31, 1984, following rejection of three prior versions of proposed decrees, this Court approved a Consent Decree (the "Decree"), in settlement of the discrimination claims asserted in this action by a class of Black professionals and managers employed by defendant Chemical Bank ("Chemical"), 579 F.Supp. 1364. Under the terms of the Decree, Chemical is obligated to pay reasonable costs and attorney's fees to class counsel, Vladeck, Waldman, Elias & Engelhard, P.C. In addition, the Decree provides that any other counsel may apply to the Court for an award of fees in accordance with prevailing legal standards. Subsequent to this Court's approval of the Decree, Chemical reached agreement with class counsel on the amount of their fee. The matter is now before the Court on the applications of Alan R. Aledort, Esq. ("Aledort"), counsel for plaintiffs Raymond W. Armorer and Neville Caesar, and Silverman & Harnes, counsel for objectors Herman Taitt and Louis Straker, for awards of fees. For the reasons stated below, Aledort's application is denied in its entirety; the application of Silverman & Harnes is granted in part.

Under 42 U.S.C. § 1988, this Court is authorized to award reasonable attorney's fees to a prevailing party in a federal civil rights action. A plaintiff may be considered a prevailing party for attorney's fees purposes if he succeeds on any significant issue which achieves some part of the relief sought in the action. *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). As the Supreme Court noted, this is a very generous standard which only brings the plaintiff over the low statutory threshold; the bulk of the analysis is involved in then determining what fee is reasonable under all the circumstances of the case. *See id.*

The starting point or "lodestar" figure for determining a reasonable fee is the product of the number of hours reasonably expended on the litigation times a reasonable hourly rate, *id.; see Blum v. Stenson,* —— U.S. ——, —————, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984), which is measured on the basis of prevailing market rates in the community. *See id.* at ——, 104 S.Ct. at 1547. In calculating the number of hours reasonably expended on the litigation, the Court will exclude those hours attributable to overstaffing, inexperience or lack of skill of counsel, and other inefficiencies that render the hours excessive, redundant, or otherwise unnecessary. *Hensley,* 103 S.Ct. at 1039–40.

Working from this lodestar amount, the district court is vested with discretion to adjust the fee upwardly or downwardly on the basis of other considerations. The most important of these additional factors is the degree of success obtained in the litigation. *Id.* at 1941. In certain limited cases where plaintiff's counsel achieves exceptional results, an enhanced award may be appropriate. *Blum,* —— U.S. at ——, 104 S.Ct. at 1548. Con-

versely, where the plaintiff succeeds on only some of his claims, the court may adjust the fee award downwardly to account for the limited nature of this success. *Hensley*, 103 S.Ct. at 1940. In situations where the successful and unsuccessful claims can be separated from one another, the court will exclude work attributable to the unsuccessful claims in arriving at an appropriate award. *See id.; McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir.1983). Where, however, the nature of the action is such that it cannot be viewed as a series of discrete claims, the court will focus generally on the overall relief obtained in relation to the hours reasonably expended on the litigation. *Hensley*, 103 S.Ct. at 1940.

■ The fee applicant bears the burden of establishing entitlement to a fee award and documenting the hours reasonably expended on the case. *Id.* at 1941. The records submitted in support of the application must be sufficiently detailed to enable the court to ascertain the accuracy of the hours claimed and the nature of the services performed. *See id.* at 1941, 1941 n. 12. Since June 15, 1984, the rule in this Circuit has been that a party seeking an award of fees must supply the court with contemporaneous time records specifying for each attorney the date, the hours expended, and the nature of the work done. *New York State Association for Retarded Children, Inc. v. Carey*, 711· F.2d 1136, 1147–48 (2d Cir.1983); *see McCann*, 698 F.2d at 131. The requirement that supporting time records be contemporaneous is mandatory for work performed after the June 15, 1983 date. *Carey*, 711 F.2d at 1147. For work performed prior to that date, the court may rely upon carefully reconstructed records in determining the appropriate amount of a fee award. *See id.* However, where supporting documentation is not sufficiently detailed to allow the court independently to evaluate the propriety of each entry, or where it is simply unrealistic for the court to undertake such an extensive analysis, the court has discretion to cut the fee request to allow for an estimated amount of excessive or duplica-

tive time. *See id.* at 1146; *see Hensley*, 103 S.Ct. at 1942 n. 13.

■ Measured in light of these principles, I have no doubt that Silverman & Harnes ("S & H") is entitled to an award of fees under § 1988; however, the proper amount of such an award must be reduced appreciably from the $189,881.25 requested in their fee application. S & H's participation in this action began in March 1981, when the firm intervened on behalf of two members of the theretofore uncertified class of plaintiffs to oppose approval by this Court of the first proposed consent decree entered into by class counsel and Chemical. S & H took an active role in all facets of the process leading up to this Court's consideration of the first proposed decree, including participation in hearings before the Court and submission of written briefs in opposition to the proposed settlement. In my Opinion and Order rejecting that settlement, 91 F.R.D. 434, I relied upon many of the deficiencies pointed out by S & H to support my decision not to approve the proposed decree. When that Opinion and Order was appealed to the Court of Appeals, S & H took an active role in the appellate process, submitting briefs and arguing in support of this Court's decision.

Following the Second Circuit's decision, 668 F.2d 654, affirming my refusal to approve the proposed settlement and remanding the action to this Court for further proceedings, S & H settled into the role of a devil's advocate, expressing unrelenting opposition to virtually all efforts by class counsel and Chemical to use the terms of the first proposed consent decree as the foundation and framework for a settlement of the action. In contesting each successive settlement proposed by class counsel and counsel for Chemical, S & H endeared themselves to neither of these groups. Yet, their persistent opposition to the terms negotiated by class counsel and Chemical ultimately worked to the benefit of the class. The Consent Decree approved by the Court on January 31, 1984 provides enhanced monetary and grievance benefits

for the class from those contained in the prior proposals, and from the standpoint of the class as a whole it is a fairer document than those earlier versions. While many of these improvements were undoubtedly incorporated into the Consent Decree in response to suggestions of and concerns raised by the Court and not as a result of initiation by S & H, S & H's presence enabled the various proposed consent decrees to be presented to and evaluated by the Court in a true adversarial context, a factor that was invaluable given the history of this action.

■ This is not to say that S & H should be entitled to recover a full fee, or a greater-than-unitary multiple of that amount as the firm requests. The time records presented to the Court indicate considerable inefficiencies and duplication of efforts, especially between Sidney Silverman and Joan Harnes, both of whom claim to bill their time at $175 per hour. The inefficiencies, which include $175 per hour partners doing work easily and ordinarily performed by junior associates, obviously stem in part from the firm's relative unfamiliarity with Title VII litigation. In addition, S & H can hardly claim that they achieved complete success through their efforts. Indeed at the end they continued vigorously to oppose the Consent Decree approved by this Court. Moreover, there is some question about the completeness of the time records submitted by S & H. Although initially unexplained, it was subsequently disclosed in a letter to the Court by Sidney Silverman that the handwritten time summaries were prepared by a paralegal from contemporaneous records provided by each attorney. When Chemical questioned the accuracy of some of these entries, S & H, after some waffling, finally refused to provide the original contemporaneous records for review. The request was, however, clearly appropriate in light of the Second Circuit's repeated pronouncements that attorney's fees applications may be evaluated in an adversary context. *See, e.g., McCann,* 698 F.2d at 131. While S & H now claims that its "reconstructed" time would show a greater number of hours than is reflected in the paralegal summaries, that claim serves only to undermine further the Court's confidence in the records submitted.

For all of these reasons, I conclude that a reduction of the fee request to $53,-678.12, or one-half the straight hourly charges, is appropriate. Although this is in a very real sense a subjective determination, it is believed that such a cut will still provide S & H with a fair fee for their efforts in this matter in view of the other factors noted above. In addition, S & H should recover its costs and disbursements of $2,249.82.

■ Aledort's application for $35,402.15 in fees on behalf of himself and his present and former employers must, however, be denied in its entirety. Aledort's involvement in this litigation began in late 1982, when he was substituted for Vladeck, Waldman, Elias & Engelhard, P.C., as counsel of record for named plaintiff Neville Caesar. In February 1983, Aledort also entered an appearance as counsel of record for named plaintiff Raymond W. Armorer. Reviewing the history of this litigation, I am hard pressed to point to even one undertaking by Aledort that produced a tangible benefit for the plaintiff class or, more loosely viewed, that independently advanced any interest of the class.

Aledort's objections to the terms upon which class counsel and Chemical were attempting to settle this action were not novel. The position he purported to advance was already being represented by S & H. At best, Aledort's arguments both in his written submissions to and in his personal appearances before the Court tended merely to parrot objections theretofore advanced by S & H and concerns previously expressed by this Court. However, Aledort's efforts frequently had a disruptive effect on the cause of the class. On several occasions, he distorted the focus of the litigation with his wholly unwarranted, unprofessional attacks on the character and conduct of co-counsel. In addition, he and his employer wasted the time of the Court,

other counsel, and class members with an abortive attempt at the hearing preceding approval of the final Consent Decree to undermine the credibility of Chemical's computer-generated records, rather than focusing at that hearing on the substance of the proposal then before the Court.

While the purpose of the fee-shifting provision of 42 U.S.C. § 1988 is to ensure that violations of important civil rights do not go unredressed because an injured plaintiff does not have the financial means to employ an attorney, *see, e.g., McCann*, 698 F.2d at 128, § 1988 is not intended to provide a source of income for attorneys who have not acted to vindicate those rights. *See, e.g., Coop v. City of South Bend*, 635 F.2d 652, 655 (7th Cir. 1980) (does not create "a civil rights fee bank to be liberally drawn upon by lawyers for their own welfare"). Although a prevailing plaintiff should ordinarily recover an attorney's fee, the Court has discretion to deny such an award where special circumstances would render an award unjust. *Hensley*, 103 S.Ct. at 1937; *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Courts have so acted on occasion. *See, e.g., Huntley v. Community School Bd.*, 579 F.2d 738, 742 (2d Cir.1978). Here, although the class itself must be considered to have prevailed for attorney's fee purposes, no part of their victory can properly be attributed to the efforts of Aledort. Accordingly, he is not entitled to an award of fees.

Alternatively, even if Aledort were otherwise entitled to a fee award, his application would be denied due to the inadequacy of his supporting documentation. As noted above, the Court of Appeals in this Circuit requires that for work performed after June 15, 1983, the attorney submit contemporaneous time records to justify his requested fee; for work performed prior to that date, the attorney may provide the court with carefully reconstructed records if contemporaneous documents do not exist. *See Carey*, 711 F.2d at 1147–48. Aledort has submitted separate time sum-

maries for himself, his former employer, and his prior employer. A quick glance at these documents demonstrates that while each may indeed be based upon contemporaneous records, none of the summaries submitted is itself contemporaneous; the records for all three attorneys are written in the same handwriting on the same type of form. However, Aledort has provided the Court with no explanation as to how these records were generated. In the absence of such an explanation, the Court cannot rely upon these documents in calculating an appropriate fee award, even if an award were justified.

Accordingly, for the reasons stated above, S & H is awarded fees in the amount of $53,678.12, plus costs and disbursements of $2,249.82. Chemical is directed to arrange for payment of these amounts to S & H within 45 days of the date of this Opinion and Order. Aledort's application for fees is denied in its entirety.

SO ORDERED.