**Gerardo TLACOAPA, Plaintiff**

v.

**Robert G. CARREGAL d/b/a The Rockologists, Defendant**

**No. 02 CIV. 4671(SCR).**

United States District Court, S.D. New York.

June 22, 2005.

Dan Charles Getman, Michael J.D. Sweeney, Law Office of Dan Getman, New Paltz, NY, for Plaintiff.

Mark E. Constantine, Yonkers, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

Gerardo Tlacoapa, the prevailing party in this action brought under the Fair Labor Standards Act and the New York Labor Law, now moves for an award of damages and for reasonable attorneys' fees and costs. For the reasons discussed below, Plaintiff's motions are granted, but Plaintiff and his attorneys are awarded amounts less than what they have requested.

### I. Background

Gerardo Tlacoapa (the "Plaintiff") brought this action against Robert G. Carregal d/b/a The Rockologists (the "Defendant"), seeking damages for unpaid wages and expenses under the Fair Labor Standards Act, 29 U.S.C. § 200 et seq. ("FLSA"), and the New York Labor Law §§ 681, 663 ("Labor Law").

Plaintiff filed his complaint in this action on June 18, 2002. After initially being assigned to the docket of Judge Swain, it was transferred to this court on October 7, 2003. After a bench trial in December 2004, the court found Defendant liable for unpaid wages and overtime, in violation of the FLSA. See 29 U.S.C. § 216(b). In addition, the court awarded Plaintiff attorneys fees and costs, pursuant to both FLSA, see 29 U.S.C. § 216(b), and the Labor Law. See N.Y. LAB. LAW §§ 198, 663 (McKinney 2002).

At the conclusion of trial, the court ordered the Plaintiff to submit specific requests for damages, attorneys fees and costs, in order to facilitate the court's determination of appropriate damages and attorneys fees in this case. With respect

to damages, Plaintiff requested $7,713.50 in unpaid wages and overtime, an equivalent amount in liquidated damages and $576 in unpaid cleaning expenses, for a total of $16,003.00. In its post-trial submission, Defendant contends that the total amount of unpaid wages due is $2,020, and that both liquidated damages and reimbursement for cleaning expenses are inappropriate in this case.

With respect to attorneys fees and litigation costs, Plaintiff initially requested $77,391 in attorneys fees and $2,534.49 in litigation costs for a total of $79,925.49. Plaintiff later requested additional fees of $3,186 and costs of $135.45, incurred in preparing post-trial submissions and responses, for a total of $85,781.43 in attorneys fees and costs.[1] Defendant contends that this amount is unreasonable, but has not proposed a specific alternative amount.

In addition, at various points during the trial, the parties made motions regarding the Defendant's corporate form. Specifically, on the morning of the first day of trial, the Defendant submitted a motion to dismiss the Plaintiff's complaint on the ground that Plaintiff incorrectly named Robert Carregal, the individual, as the defendant, rather than the corporation, Robert Carregal, Inc., which Defendant claims was the Plaintiff's actual employer. At the close of testimony in this case, Plaintiff filed a motion to amend the complaint to include Robert G. Carregal, Inc. and its successor corporation, the Rockologists, Inc., as defendants in this case, on the grounds that they are alter egos of the Defendant, Robert G. Carregal. The court reserved judgment on these motions as well.

## II. Analysis

### A. The Defendant's Motion To Dismiss And Plaintiff's Motion To Amend

■ The Defendant's motion to dismiss, having been submitted on the first day of trial, is clearly untimely, and for that reason alone must be denied. More importantly, however, the court finds, based on evidence submitted at trial, that Robert Carregal, Inc. and its successor corporation, The Rockologists, Inc., are alter egos of the Defendant, Robert G. Carregal. Specifically, trial testimony and other evidence indicates that the Defendant was the only officer and shareholder of both corporations, that the Defendant failed to follow corporate formalities, and that there was a complete intermingling of corporate and personal accounts and funds.

Motions to amend may be granted "when justice so requires." FED. R. CIV. P. 15(a). Given the nature of the relationship between the Defendant and the corporate entities that he owns, and the possibility that the failure to grant Plaintiff's motion might facilitate the Defendant's improper avoidance of liability in this case, justice requires that Plaintiff's motion to amend be granted.

### B. Damages

#### 1. Unpaid Wages And Overtime

The bench trial in this case involved the testimony of only four witnesses—three for the Plaintiff, including the Plaintiff himself, the Plaintiff's wife, and one of Plaintiff's co-workers, and the Defendant. In general, the court finds the testimony of Plaintiff's witnesses to be credible with

---

**1.** It is not clear to the court how fees and costs of approximately $3400, when added to an initial request for approximately $80,000, yields a total request of close to $86,000. That said, Plaintiff's arithmetic is ultimately not relevant as the court, in this decision, will perform its own calculations based on its own determinations of reasonable rates of pay and hours billed.

respect to the nature and extent of work performed by Plaintiff. The testimony of each of Plaintiff's witnesses appeared trustworthy, was generally consistent with the testimony of the others, and was corroborated by personal records made contemporaneously by Plaintiff's wife. By contrast, the court finds the Defendant's testimony considerably less credible—a determination made easy by the Defendant's admission, on his second day of testimony, to have lied, and offered falsified records, during his first day on the witness stand.

■ Precisely calculating Plaintiff's damages is difficult, because the Defendant failed to maintain accurate and comprehensive records of Plaintiff's employment. FLSA and its implementing regulations require an employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by [the employer]." 29 U.S.C. § 211(c). Ordinarily, an employee seeking to recover unpaid minimum wages or overtime under FLSA "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). However, when an employer fails to maintain records concerning the employee's wages, hours, and other terms and conditions of employment as required by FLSA, the plaintiff may carry out this burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.See also Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir.1997).

At trial, Plaintiff presented evidence that established, to the court's satisfaction, the following facts: that Plaintiff was employed from June 2000 until May 2002 and that he regularly worked six days a week, five doing stone masonry work and one performing lawn services; that the only exceptions to this were a few unpaid holidays, one sick day, approximately ten days cancelled due to weather, and the entire period between December 2000 and March 2001, during which time the plaintiff was laid off; that the Plaintiff's workdays as a stone mason were 8.5 hours long, including a half-hour lunch break, and that his days performing lawn services were ten hours long.

In addition, the evidence established that the Plaintiff was typically paid some of his wages by check and the rest, including all wages for two months work in the spring, by cash. Moreover, it is clear that Plaintiff was never paid time-and-half for overtime hours during those weeks in which he worked more than 40 total hours, or for the time Plaintiff was required to spend picking up his wages. In addition, Plaintiff was not paid some of the wages owed to him for work performed during his last two weeks as the Defendant's employee.

With respect to the Plaintiff's hourly wage, the court finds that he was initially paid $8 per hour, and that he received a raise to $9 per hour during the week ending July 2, 2000 and a raise to $10 per hour during the week ending October 1, 2000. Notably, the evidence indicates that, throughout his employment, Plaintiff was paid $8 per hour by check, and the additional $1 or $2, depending on his wage at the time, in cash.

As part of his post-trial submission, Plaintiff submitted a week-by-week analysis of Plaintiff's unpaid wages and overtime based on the above-mentioned facts.

Having found that Plaintiff has proven these facts, the court adopts Plaintiff's calculation of unpaid wages and overtime. As such, Plaintiff is owed $7,713.50 in unpaid wages and overtime.

### 2. Liquidated Damages

An employer who violates FLSA's minimum wage and overtime requirements is liable for any unpaid minimum wages or overtime compensation "and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Liquidated damages" in this context "is something of a misnomer," since "it is not a sum certain, determined in advance as a means of liquidating damages that may be incurred in the future," but rather "an award of special or exemplary damages added to the normal damages." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1063 n. 3 (2d Cir.1988). *See Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature.").

■ Normally, when an employer is found liable for unpaid minimum wages or overtime, the full award of liquidated damages provided for in the statute is mandatory. *See* 29 U.S.C. § 216(b) (liquidated damages "shall" be awarded); *Keun–Jae Moon v. Joon Gab Kwon*, 248 F.Supp.2d 201, 234 (S.D.N.Y.2002). However, under section 11 of the Portal–to–Portal Act, the Court has discretion to reduce or deny this liquidated damages award "if the employer shows to the satisfaction of the court that the act or omission giving rise" to the plaintiff's action under FLSA "was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. See *Southern New England Telecomms.*, 121 F.3d at 70–71. The employer bears the "difficult" burden of establishing, by "plain and substantial" evidence, its

subjective good faith and objective reasonableness, as "double damages are the norm, single damages the exception." *Southern New England Telecomms.*, 121 F.3d at 71 (internal quotation marks and citations omitted).

■ Here, the court does not find the Defendant's violations of FLSA law to have been in good faith. Ignorance of FLSA requirements is insufficient to establish good faith and the employer must "take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman v. RSR Security Services Ltd.*, 172 F.3d 132, 142 (2d Cir.1999) (citing *Southern New England Telecommunications Corp.*, 121 F.3d at 71). There is no evidence that the Defendant made any effort to ascertain FLSA requirements or to fully comply with basic recordkeeping requirements. Moreover, the Defendant paid its employees off-the-books in cash, and knowingly failed to compensate Plaintiff for extensive overtime work over a period of many years. Accordingly, the Defendant has not established good faith and reasonable grounds, and therefore the court cannot reduce the amount of liquidated damages provided for in the statute. As such, Plaintiff is also entitled to $7,713.50 in liquidated damages.

### 3. Reimbursement For Uniform Cleaning

■ Plaintiff argues that he is entitled to reimbursement for the costs of cleaning his uniform, as required by the Labor Law. *See* 12 N.Y.C.R.R. § 138–2.1 et. seq. But the section cited by Plaintiff applies to employers in the "hotel industry." 12 NYCRR § 138–1.1. One could not reasonably argue that Defendant's company is part of the hotel industry and Plaintiff has not cited (nor has the court found) any authority indicating that the provisions cited by Plaintiff apply to an employer in

Defendant's line of business.[2] Accordingly, Plaintiff is not entitled to any damages for reimbursement of uniform cleaning expenses in this case.

### 4. Summary of Total Damages

For the above 0mentioned reasons, the Plaintiff is entitled to $7,713.50 in compensatory damages for unpaid wages and overtime and an equivalent amount of liquidated damages. The total damages, therefore, are $15,427.00.

### C. Attorneys Fees

### 1. Reasonable Rate

■ Both FLSA and the Labor Law provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendant. See 29 U.S.C. § 216(b) (2000); N.Y. LAB. LAW § 198 (McKinney 2002). The fee applicant, in this case the Plaintiff, bears the burden of proving the reasonableness of the fees and costs he claims. *See Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999).

■ In determining the amount of attorney fees to award, the Second Circuit uses the "lodestar" method, which involves determining the reasonable hourly rate for each participating attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the lodestar amount. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763–64 (2d Cir.1998). The lodestar amount represents a presumptively reasonable fee award, but the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case. *See id.* at 764.

■ To determine the reasonable hourly rate for each attorney, the Court must look to the market rates currently "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998). Since this case was brought in the Southern District of New York, the relevant community to which the Court should look is Manhattan civil rights attorneys. *See Moon v. Kwon*, 2002 WL 31512816, at *1–2, 2002 U.S. Dist. LEXIS 21775, at *4–5 (S.D.N.Y. Nov. 8, 2002) (considering rates for civil rights attorneys in a Fair Labor Standards Act case) citing *Marisol A. v. Giuliani*, 111 F.Supp.2d 381, 386 (S.D.N.Y.2000). This is true even though this particular case was litigated in the White Plains courthouse. *See Stewart v. Barclay's Business Credit*, 860 F.Supp. 150 (S.D.N.Y.1994) (recognizing the "time honored practice" of applying New York City rates in calculating attorneys fees throughout the Southern District of New York, including in counties north of the City).

In this case, Plaintiff's attorneys are requesting the following billing rates, which they claim to be their ordinary billing rates for Southern District litigation: $375 per hour for Dan Getman; $300 per hour for Michael Sweeney; $200 per hour for Tara Bernstein; and $125 per hour for paralegals. At the time of trial in this case, Mr. Getman had approximately twenty years experience, Mr. Sweeney had nine and Ms. Sweeney had three. Although an attorney's customary rate is a significant factor in determining a reasonable rate, *see, e.g., Parrish v. Sollecito*, 280 F.Supp.2d 145, 169–70 (S.D.N.Y.2003), the court finds that these rates are unreasonably high in this case.

■ Although courts in this district have awarded attorneys fees based on

---

**2.** Moreover, it is important to note that Plaintiff's complaint does not contain any reference to any claim for reimbursement for the cost of cleaning uniforms.

rates as high as those requested by the Plaintiff, such rates are usually reserved for attorneys in larger law firms. Courts have recognized that the size of the firm representing a plaintiff seeking attorney's fees is a factor in determining a reasonable attorney's fee, largely because of overhead costs. *See, e.g., Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058–59 (2d Cir.1989) (noting that the size of an attorney's firm is relevant in determining the relevant community's "prevailing market rates" and that "smaller firms may be subject to their own prevailing market rate"), cert. denied, 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990); *Algie v. RCA Global Communications, Inc.,* 891 F.Supp. 875, 895 (S.D.N.Y. 1994) ("If the movant is represented by a small or medium-size firm, the appropriate rates are those typically charged by such firms, whereas a movant may obtain higher compensable rates if represented by a large urban firm, since such firms typically charge more per hour to cover a higher overhead."), aff'd, 60 F.3d 956 (2d Cir. 1995).

Plaintiff's attorneys are indisputably members of a small law firm, as it contains only three full-time attorneys, two "of counsel" attorneys (in Texas and West Virginia) and three paralegals. For firms this small, courts in this district have found rates significantly lower than those requested by Plaintiff to be reasonable. *See, e.g., Pascuiti v. New York Yankees,* 108 F.Supp.2d 258, 266 (S.D.N.Y.2000) (rejecting billing rate of $325 per hour for attorneys with almost 30 years experience in civil rights litigation). Instead, the range of fees in this District for seasoned civil rights litigators in small firms is between $ 200/hr and $ 300/hr. *See id.; Shannon v. Fireman's Fund Ins. Co.,* 156 F.Supp.2d 279, 299 (S.D.N.Y.2001). This court finds rates within this range to be appropriate in this case as well.

With these principles in mind, therefore, the court concludes that a reasonable rate for Dan Getman is $250 per hour. *See Sulkowska v. City of New York,* 170 F.Supp.2d 359, 366 (S.D.N.Y.2001) ($250/hr is the most commonly awarded rate to those with significant experience in the area); *Pascuiti,* 108 F.Supp.2d at 266–67 (awarding $250/hour). Consistent with his lesser, but still significant, experience, the court finds that a reasonable rate for Michael Sweeney is $200 per hour. With respect to Tara Bernstein, a junior attorney with limited experience, the court finds that $125 per hour is reasonable. *See Lawson v. City of New York,* 2000 WL 1617014, at *4–5, 2000 U.S. Dist. LEXIS 15709, at *12–13 (S.D.N.Y. Oct. 27, 2000) (concluding that the rate in this District for associates ranges from $105 to $ 180 per hour and applying a rate of $135/hour for a junior associate in a small firm who has been admitted for five years).

Plaintiff is also requesting $125/ hour for paralegal time, and this too is unreasonably high. The only case cited by Plaintiff in which such a high rate was approved, *Morris v. Eversley,* 343 F.Supp.2d 234, 248 (S.D.N.Y.2004), was a case involving Milbank, Tweed, Hadley & McCloy, a large New York law firm. Moreover, although Plaintiff's attorneys provided descriptions of the paralegals' backgrounds, they provided little, if any, information regarding their paralegal experience and the nature of their tasks in this case. As such, the court finds that a paralegal rate of $75 is reasonable in this case. *See Sulkowska,* 170 F.Supp.2d at 367 (approving a rate of $95 per hour for a paralegal whose role throughout the litigation "was more akin to an associate or co-counsel"); *Marisol A.,* 111 F.Supp.2d at 388 (the prevailing market rate for paralegal services is within the range of $ 60–75).

## 2. Reasonable Hours

■ To determine the number of hours reasonably expended, the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. *See Gierlinger*, 160 F.3d at 876. In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties. *See id.* The court may exclude any claimed hours that it determines are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

■ In this case, Mr. Getman claims 45.44 hours of work, Mr. Sweeney claims 124. 19 hours and Ms. Bernstein claims 98.2 hours. Paralegal Carolyn Mow claims 72.6 hours and paralegal Anibal Garcia claims 23.83 hours. Along with its reply to Defendant's opposition to Plaintiff's motion for costs and attorneys fees, Plaintiff requested reimbursement for additional time, specifically another 9.87 hours for Mr. Sweeney, 0.5 hours for Ms. Bernstein, and 0.5 hours for both paralegals. In their initial request for attorneys fees, however, Plaintiff's attorneys agreed to a 10 percent reduction in hours billed to account for duplication and unnecessary time. The court agrees that, not only is a 10 percent reduction appropriate, an additional 25 percent reduction in hours billed is necessary to arriving at a reasonable fee in this case. *See Pascuiti*, 108 F.Supp.2d at 268

(excluding excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours); *Krumme v. WestPoint Stevens, Inc.*, 79 F.Supp.2d 297, 310 (S.D.N.Y.1999) (reducing overall request by 20% to account for duplicative and excessive charges).

The court comes to this conclusion for various reasons. First, the court has closely examined the billing records submitted by Plaintiff's attorneys, and finds several specific entries to be unreasonable. *See Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir.1994) ("The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."). For example, Plaintiff's attorneys claim that preparation of pre-trial materials, including the statement of agreed facts, witness and exhibit lists, and findings of fact and conclusions of law, required at least 4.3 hours of Mr. Getman's time, approximately 18 hours[3] of Mr. Sweeney's time, 25.7 hours of Ms. Bernstein's time, and approximately 3 hours of paralegal time. By their own billing rates, therefore, Plaintiff's attorneys are asking for over $12,500 for preparation of pre-trial exhibits and, by the court's rates, they are asking for over $8000.

This request is, by itself, unreasonable, but it is even more problematic when one considers the nature of the pre-trial submissions received by the court. Plaintiff has itself acknowledged that the issues in

---

**3.** Mr. Sweeney's records indicate that he worked on these matters over several days, in which he also worked on other tasks. For days on which he worked on trial materials as well as other Tlacoapa matters, Mr. Sweeney did not specify how much time he spent on pre-trial materials and how much time he spent on other aspects of the case. It is worthwhile to note that, if time records lack

such specificity that the court is unable to determine a proper fee allocation, then plaintiffs' fee recovery may be reduced for that reason as well. *See, e.g., Ragin v. Harry Macklowe Real Estate Co.*, 870 F.Supp. 510, 520 (S.D.N.Y.1994). Nevertheless, the above figure reflects the court's conservative estimate of how much time on these days was actually spent on pre-trial matters.

this case were "very simple": how many hours the plaintiff worked, and how many hours he was compensated for. In fact, the Defendant conceded from the outset of this litigation that the Plaintiff had worked overtime hours for which he did not receive compensation, and the only issue was determining how many. Not surprisingly, therefore, Plaintiff's proposed findings of fact and law were brief, amounting to approximately ten double-spaced pages plus charts summarizing relevant portions of the Defendant's testimony and estimated damages. Plaintiff did submit two binders of exhibits, but these exhibits consisted entirely of transcripts, copies of records that Plaintiff did not itself create, or other documentation that needed only to be photocopied before being submitted to the court. Finally, the parties' joint statement of agreed facts was a single page long and, in fact, contained several 'facts' that were, according to the statement itself, disputed by the parties. The court simply cannot imagine how these documents required approximately 50 hours of attorney time to produce.

Plaintiff's request is made even more problematic by the fact that the timesheets indicate that tasks were performed by individuals more qualified, and therefore more highly compensated, than necessary. *See Plummer v. Chemical Bank*, 592 F.Supp. 1168, 1172 (S.D.N.Y.1984) (reducing fee request by one-half because of numerous inefficiencies, including "$175 per hour partners doing work easily and ordinarily performed by junior associates"); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F.Supp. 1195, 1197 (S.D.N.Y.1979) ("Many of the functions performed by the partners could have been satisfactorily accomplished by associates, with a considerable saving in fees."), aff'd, 622 F.2d 1106 (2d Cir.1980).

For example, Mr. Sweeney is requesting reimbursement for time spent preparing exhibits and conducting legal research on topics including the federal rules of evidence and rules regarding amending pleadings. Ms. Bernstein also billed significant amounts of time for preparing exhibits. The legal research apparently conducted by Mr. Sweeney could easily have been performed by Ms. Bernstein, *see Shannon*, 156 F.Supp.2d at 301–02 (refusing to reimburse hours billed by a senior attorney for legal research when they could have been performed by a junior associate), and the preparation of exhibits could easily have been done by Ms. Bernstein or even by paralegals, who billed remarkably few hours in preparing pretrial materials, particularly given the nature of the exhibits in this case.

Further, the court finds that an across the board reduction is warranted in light of its own observations of Plaintiff's attorneys at trial. In particular, the attorneys' presentation of evidence and examination of witnesses in this case belabored tangential or entirely irrelevant issues, causing them to last an unnecessarily long time and forcing the court to repeatedly encourage the attorneys to try their cases more efficiently. Many exhibits were not organized in ways that made them easily accessible to witnesses and, on repeated occasions, the court felt compelled to engage in its own brief examinations of witnesses, which elicited some of the most crucial testimony in this case. Not only did this inefficiency result in an unnecessarily lengthy trial, which itself resulted in increased attorney hours billed, but, the court must conclude, it likely manifested itself in unnecessarily lengthy pre-trial preparations as well.

Finally, Plaintiff has requested compensation, at full hourly rates, for other tasks and activities that should be compensated only at a discount. For example, Plaintiff seeks reimbursement for non-trivial amounts of travel time to and from confer-

ences and trial, for which the court finds that a reduction in hours billed is also warranted. Courts in this Circuit regularly reduce attorney's fees by 50% for travel time because time spent by attorneys in transit may be beneficial, but it probably is not as productive as time at the office or in court. *See Wilder v. Bernstein,* 975 F.Supp. 276, 283–84 (S.D.N.Y.1997); *Lilly v. County of Orange,* 910 F.Supp. 945, 951 (S.D.N.Y.1996); *Luciano v. Olsten Corp.,* 925 F.Supp. 956, 965 (E.D.N.Y.1996), aff'd, 109 F.3d 111 (2d Cir.1997). Also, Plaintiff's attorneys have billed substantial amounts of time to cursorily described internal conferences with each other, but recovery of the full amount billed would be inappropriate. *See Pascuiti,* 108 F.Supp.2d at 271 (allowing attorneys to recover the full amount of time billed to internal conferences would constitute an impermissible "windfall" because "internal conferences are harder to verify and therefore more likely to be excessive"); *Gillberg v. Shea,* 95 Civ. 4247, 1996 WL 406682, at *5, 1996 U.S. Dist. LEXIS 21847, at *7 (S.D.N.Y. May 31, 1996) ("Excessive staffing and 'office conferences' have been the basis for courts to reduce fee requests by one-quarter to one-third.").

For the above-mentioned reasons, the court finds that a 35 percent reduction in hours billed is necessary in this case.

### 3. Lodestar Calculation

Pursuant to the foregoing discussion of the attorneys' reasonable hourly rates and reasonably expended hours, the Court finds that plaintiffs are entitled to $37,558.00 in attorneys' fees. In reaching this amount, the Court calculates the lodestar amount as follows:

| Attorney | Reasonable Rate | Hours Billed | Reasonable Hours | Total |
|---|---|---|---|---|
| Getman | $250/hour | 45.44 | 29.54 | $ 7385.00 |
| Sweeney | $200/hour | 134.06 | 87.14 | $17428.00 |
| Bernstein | $125/hour | 98.7 | 64.16 | $ 8020.00 |
| Paralegal | $ 75/hour | 96.93 | 63.00 | $ 4725.00 |
| Total | | | | $37558.00 |

### 4. Adjustments To The Lodestar

 Once the lodestar amount is determined, it may be modified based on equitable considerations that may "lead the district court to adjust the fee upward or downward, including the most important factor of the 'results obtained.'" *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933 (noting that most factors usually are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."). There is a "strong presumption," however, that the lodestar figure represents a "reasonable" fee. *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir.1992), cert. denied sub nom.

 Defendants argue that Plaintiff's fees should be reduced because, but for Plaintiff's attorneys' desire for court-ordered attorneys fees, the matter could have been settled earlier, thus avoiding the need for protracted litigation. Courts have reduced fee awards where plaintiffs unreasonably rejected settlement offers and eventually obtained relief which they could have gotten by settling earlier. *See, e.g., Raishevich v. Foster,* 70 F.Supp.2d 411, 415 (S.D.N.Y.1999) (rejecting award of attorneys' fees where plaintiffs refused a realistic offer to settle early in the case). But the Second Circuit has recognized that "[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was

warranted and, accordingly, whether attorney's fees should be awarded." *Ortiz v. Regan,* 980 F.2d 138, 140 (2d Cir.1992). In this case, the Court finds that Plaintiff never unreasonably rejected a settlement proposal that approximated the relief ultimately obtained and, as such, no reduction is warranted for this reason.

Moreover, since Plaintiff ultimately recovered most of the damages that it was seeking, no adjustment is warranted for results obtained. As such, Plaintiff is awarded the full amount of attorneys fees resulting from the court's lodestar calculation.

### D. Costs

█ It is well-settled in this Circuit that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998). *See also Kuzma v. Internal Revenue Service,* 821 F.2d 930, 933–34 (2d Cir.1987) ("Identifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable…and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate.").

Plaintiff requests reimbursement for $2669.94 in costs. Having reviewed Plaintiff's itemized list of expenditures, the court finds Plaintiff's request to be reasonable. Therefore, Plaintiff is also awarded $2669.94 for out-of-pocket costs.

### E. Total Damages, Attorneys Fees And Costs

Based on the foregoing, the Plaintiff is awarded:

$15,427.00 in total damages;

$37,558.00 in attorneys fees;

$ 2,669.94 in costs.

### III. Conclusion

For these reasons,

Defendant's motion to dismiss is DENIED.

Plaintiff's motion to amend his complaint to add Robert G. Carregal, Inc. and The Rockologists, Inc. as named defendants is GRANTED.

Plaintiff's motion for damages is GRANTED, and Plaintiff is awarded $15,427.00 in total damages.

Plaintiff motion for attorneys fees and costs is also GRANTED, and Plaintiff is awarded $40,227.94 in attorneys fees and costs.

The clerk of the court is directed to CLOSE this case.

It is so ordered.